LOUISE V. LYNCH, Appellant, *v.* GERALD J. LYNCH, Defendant. DEBORAH J. ARNOLD, by IRENE M. ARNOLD, Her General Guardian, Intervenor-Respondent.

Fourth Department, April 5, 1962.

*Edward B. Horning* and *James Malin* for appellant.

*Kysor & Della Posta* (*Frank P. Della Posta* of counsel), for intervenor-respondent.

WILLIAMS, P. J. The plaintiff-appellant appeals from an order denying her petition requesting that a final judgment of divorce in her favor and against Gerald J. Lynch, her former husband, be entered *nunc pro tunc* as of the 12th day of September, 1958.

This appeal is contested by the general guardian of the daughter of one George Arnold, whom the plaintiff-appellant married after she thought her divorce against Lynch had become final. The daughter is the issue of a former marriage of Arnold.

The action for divorce by Louise V. Lynch, now Louise V. Arnold, against Gerald J. Lynch was instituted in 1958. The defendant failed to appear or answer, and proof by default was taken on September 12, 1958. The record shows the following at the conclusion of the formal proof:

THE COURT: Well, we will allow counsel fee $250.00. Alimony $30.00 a week and divide that, say,—how old are these children?

THE PLAINTIFF: Five and six.

MR. GOLDSTEIN: Five and six.

THE COURT: We will give each one of them $5.00 and the mother the difference.

MR. GOLDSTEIN: Thank you.

THE COURT: That would be $20.00 for the mother and $5.00 for each child.

MR. GOLDSTEIN: I have no further questions of this witness.

THE WITNESS: Thank you. (Witness excused.)

THE COURT: Decree granted.

MR. GOLDSTEIN: Thank you.

THE COURT: Custody of children to the mother, that is, the plaintiff. Visitation rights to the defendant if arranged with the plaintiff.

MR. GOLDSTEIN: Thank you, your Honor.

THE COURT: Visitation rights if and as arranged between the parties. The rules require that you prepare your papers within two weeks.

It is thus obvious that the court decided all the questions involved in the case and left only for the conclusion of the matter the formality of a written decision because " The rules require that you prepare your papers within two weeks.''

As a matter of fact, in making this statement the court was simply complying with the regulatory provisions of a local rule and rules 191 and 283 of the Rules of Civil Practice. Except for the last sentence in rule 191, no formal findings would have been necessary and judgment could have been entered upon the oral findings made at the conclusion of the proof.

All of this occurred, as aforesaid, on September 12, 1958. Within the two-week period, on September 23, the findings and judgment were signed and entered; and under the plain language of section 1176 of the Civil Practice Act that interlocutory judgment would ordinarily become final three months later, or on December 23, 1958.

Plaintiff, thinking that the decree had become final on December 12, married George Arnold on December 18. Thereafter George Arnold died. The plaintiff, Louise V. Arnold, seeks to be appointed administratrix of his estate and her application is opposed by the general guardian for the daughter intervenor.

Special Term denied the application on the ground that the court lacked jurisdiction or power to grant the order requested.

At the time in question, section 1176 of the Civil Practice Act provided that an interlocutory judgment in an action for divorce should become final as of course three months after the entry thereof unless the court for sufficient cause should otherwise order prior to the expiration of the three-month period. The difficulty arises from the words " Three months *after the entry of the interlocutory judgment* * * * such interlocutory judgment shall become the final judgment as of course '' (italics added). Technically, the former Mrs. Lynch was married to George Arnold five days before the expiration of the three-month period. There remains, then, for consideration the problem of whether Special Term had the power to grant the motion and, if so, whether it should have been granted as a matter of discretion.

The facts of *Jackman* v. *Jackman* (258 App. Div. 838) are almost identical. In that case the interlocutory decree was

granted March 6 and was entered March 12 and it became final, as of course, on the 12th day of June, 1937. On the 7th of June the plaintiff remarried under the mistaken assumption that the divorce became final three months after the granting of the interlocutory decree. About two years later the plaintiff instituted an action for separation, and during the pendency of that action an order was granted permitting the re-entry of the interlocutory decree *nunc pro tunc* as of the 6th day of March, 1937. The lower court found that there was no suggestion that the plaintiff acted in bad faith. The Appellate Division held that the equities were clearly in favor of the plaintiff and that Special Term had exercised sound discretion in granting the order, which was unanimously affirmed. Leave to appeal to the Court of Appeals was denied (282 N. Y. 808). The only difference between the *Jackman* case and the present case is that in the *Jackman* case an order was signed but not entered and in the present case the decree was granted but not signed.

A discussion of the powers of the courts to grant *nunc pro tunc* orders, and particularly with reference to judgments of divorce, is contained in *Cornell* v. *Cornell* (7 N Y 2d 164). In that case an interlocutory judgment of divorce was entered in 1915. Section 1774 of the Code of Civil Procedure, which applied at that time, provided that no final judgment could be entered until after the expiration of three months from the filing of the decision of the court or the report of the Referee. Within 30 days after the expiration of such three-month period, a separate final judgment could be entered as of course unless otherwise directed by the court. Although the court did not direct otherwise, no final judgment of divorce was entered. Fifteen years after the interlocutory period, the plaintiff remarried. About 11 years later Special Term granted an order directing the entry of a final judgment *nunc pro tunc* as of 1915, the year in which the interlocutory judgment was granted. The Appellate Division vacated the order but the Court of Appeals reinstated it. The opinion of the Court of Appeals states (p. 168): "The basis for entry both of an interlocutory and final judgment of divorce is the decision of the court or the report of an Official Referee, and the entry of the judgment is the ministerial act of the clerk (*Snell* v. *Snell*, 177 Misc. 923), which is not altered by the circumstance that it is usually signed by the Justice of the court by whom the decision was made." The court discussed the distinctions between omissions to perform ministerial acts and failures that are jurisdictional. The basis of the opinion is that the failure

to enter final judgment was a mere irregularity. The *Jackman* case (*supra*) is cited with approval.

In *Merrick* v. *Merrick* (266 N. Y. 120), the Court of Appeals reversed an order which permitted the entry of an order *nunc pro tunc* permitting the defendant to remarry in this State. A decree of divorce was obtained against the respondent wife in 1920 which forbade her to remarry during her husband's life without permission of the court. She remarried without procuring such permission. The Court of Appeals stated: "The conclusion is justified that her omission was due merely to ignorance of the law" (p. 122).

About 14 years later her husband started an action for an annulment, claiming that he had been fraudulently induced to marry her by her misrepresentation that she had been plaintiff in the divorce action. During the pendency of the annulment action she moved at Special Term for an order permitting her remarriage to be granted *nunc pro tunc* as of a date preceding her second marriage. The motion was granted and the order granting it was affirmed in the Appellate Division. The Court of Appeals reversed but said (p. 122): "Irregularity in procedure may, of course, be corrected by orders *nunc pro tunc*. (*Mishkind-Feinberg Realty Co.* v. *Sidorsky*, 189 N. Y. 402.) When a ruling has in fact been made but is improperly evidenced by a defective mandate, or by no mandate at all, an appropriate and suitable order or judgment which manifests the existence of a determination may subsequently be granted to take effect as of the date of such determination. It cannot record a fact as of a prior date when the fact did not then exist. (*Guarantee Trust Co.* v. *Philadelphia, Reading & N. E. R. R. Co.*, 160 N. Y. 1, 7.) An order may not be made *nunc pro tunc* which will supply a jurisdictional defect by requiring something to be done which has not been done. (*Stock* v. *Mann*, 255 N. Y. 100, 103.)" It was decided that new rights could not be created by a judicial declaration in 1933 concerning an assumed fact which concededly did not exist in 1925 and the existence of which was an essential element of a lawful marriage. However, the significant part of this opinion is the statement that irregularity in procedure may be corrected by orders *nunc pro tunc*. In the *Cornell* case the Court of Appeals did not find that the *Merrick* case was an obstacle to its determination where mere irregularity or lack of formality was concerned.

The case of *Monacchio* v. *Monacchio* (247 App. Div. 810) permitted a final decree to be entered *nunc pro tunc*, stating: "The Special Term denied the motion on the authority of

*Merrick* v. *Merrick* (266 N. Y. 120), where it was held that the court was without power to make an order *nunc pro tunc* ' which will supply a jurisdictional defect by requiring something to be done which has not been done.' That is not the situation here. Here the court, in fact, determined that plaintiff was entitled to a final decree and signed it. The failure to enter the final decree did not make it void but was an irregularity which the court had the power to cure." (See, also, *Matthews* v. *Matthews,* 185 Misc. 1013 and *Smith* v. *Smith,* 130 Misc. 905.)

We find that the judgment was, in legal effect, granted on the 12th day of September, 1958, and that the Trial Judge considered that what was to follow, namely, the receipt and signing of formal findings, constituted a mere formality or a ministerial act. There was nothing left for the court's discretion or determination. Special Term, therefore, had ample jurisdiction to remedy the harm caused by these relatively immaterial failures. The requirement that the decision be in writing is not, as we have observed, statutory, but is a regulatory rule to standardize practice in this field. The decision of this court in *Powell* v. *Powell* (282 App. Div. 99), insofar as it is inconsistent with this decision, is overruled.

Inasmuch as Special Term had power to grant the order requested and as the application is meritorious, in the exercise of discretion it should have been granted.

The order appealed from should be reversed.

McClusky and Henry, JJ. (dissenting). We dissent and vote to affirm. " The function of orders *nunc pro tunc* is to correct irregularities in the entry of judicial mandates or like procedural errors." (*Mohrmann* v. *Kob,* 291 N. Y. 181, 186.) Here there were no such irregularities or errors. The proceedings were entirely regular. They accorded with the usual practice and with the Rules of Civil Practice. (Rules Civ. Prac., rule 191.) " The decision was the only authority for entering the judgment." (*Cornell* v. *Cornell,* 7 N Y 2d 164, 168.) It was not signed until September 23, 1958, and the ministerial act of entering the judgment could not take place until that date. In our view Special Term's announcement made at the conclusion of the proof was not a decision of the court upon which a judgment could be prepared and entered. It was merely an expression of the court's views, designed to guide plaintiff's attorney in his preparation of the decision, required to be made by rule 191 of the Rules of Civil Practice. Furthermore, the appellant herein applied for a marriage license almost exactly 90 days after the trial took place and was advised that the

application was premature. She knew there was some question as to whether or not she could remarry, but nevertheless proceeded ahead. There is little, if any, ground for the exercise of equitable consideration in behalf of the appellant.

BASTOW and HALPERN, JJ., concur with WILLIAMS, P. J.; McCLUSKY and HENRY, JJ., dissent and vote to affirm in a memorandum.

Order reversed, without costs of this appeal to any party and application granted, without costs.