Marshall E. Livingston, J.
These motions for summary judgment will be considered as listed below.
*782 Motion A in Action No. 1 is by the Union Labor Life Insuranee Company (Union) for summary judgment on the first cause of action in plaintiff’s complaint.
Motion B in Action No. 1 is by defendant John Hancock Mutual Life Insurance Company (Hancock) for summary judgment in the third cause of action in plaintiff’s complaint.
Motion C in Action No. 1 is by defendant Dorothy Colbert Stanford (Dorothy) for summary judgment on the second cause of action in plaintiff’s complaint.
Motion D in Action No. 2 is by plaintiff for summary judgment against Hancock on the double indemnity provision of its policy No. M-7615941.
Motion E in Action No. 1 is by Dorothy for summary judgment on her cross claim against defendant Union on the accident indemnity provisions of its policy No. C-2240.
Motion F in Action No. 1 is by plaintiff for summary judgment on all causes of action set forth in the complaint.
The cases concern a husband, Willie Lee Stanford (Willie Lee), now deceased, his wife, Dorothy, and their 13-year-old son, the plaintiff Kelvin Lee Stanford (Kelvin).
In June, 1971, Dorothy commenced an action for divorce against Willie Lee. On September 17, 1971, Willie Lee applied for a life insurance policy from Hancock. Policy No. M-7615941 on his life was issued by Hancock on that date, wherein “ Dorothy A. Stanford, wife ” was named beneficiary.
On behalf of Kelvin, it is claimed that Dorothy fraudulently induced her husband to apply for this policy by promising him she would discontinue the divorce proceeding and reconcile their marital differences. It is claimed by Willie Mae Johnson, the mother of Wilile Lee, that Dorothy told her after Willie Lee’s death that she never intended to discontinue the divorce, but urged him to take out the policy because she felt he would not live long.
At any rate, Dorothy did not discontinue the divorce action. On December 2, 1971, Dorothy obtained a default divorce against Willie Lee. . The findings of fact and conclusions of law and judgment or decree were signed on December 17, 1971. However, they were not entered in the Monroe County Clerk’s office until March 13, 1972. On December 26, 1971, nine days after the decision and judgment were signed, Willie Lee Stanford died of an overdose of drugs.
In addition to the Hancock policy, the deceased was insured by a group life policy, as well as a group accidental death policy, by reason of the fact that he was a member in good standing *783 of the International Hod Carriers and Common Laborers Union of America, Local No. 435. These policies were issued by ‘ ‘ Union ’ ’ upon application of the trustees of the Rochester Laborers Welfare Fund.
The 1 ‘ Hancock ’ ’ policy provided for a payment to the beneficiary of the sum of $3,000, plus a five-year level term insurance of $2,000. In addition, this policy contained an accidental death benefit whereby “twice the amount of the applicable sum ” would be paid for accidental death.
The “ Union ” group life policy G-1083 was in the amount of $10,000 to be paid ‘ ‘ to the first surviving class of the following classes of * * * Beneficiaries: the Insured’s (a) widow * * # (b) surviving children”. The “Union” policy C-2240 was a group accidental death contract in the amount of $10,000 and contained the same beneficiary clause as the “Union” group life policy.
Hancock has paid the plaintiff-assignee Milo Thomas the $5,000 death benefit under policy M-7615941. Action No. 2 by the assignee is for an additional $5,000 alleged to be due because of the “accidental death” of the insured. Hancock resists this claim.
Union has also paid to Dorothy the sum of $10,000 on the group life policy G-1083. In Action No. 1 Dorothy has made a cross claim against Union for $10,000 under the accidental death provisions of policy No. C-2240, which Union resists. The cross claim against Union arises because this court dismissed, without prejudice, a previous action by Dorothy against Union. The attorneys for both parties agreed that, rather than start a new action, the matter of whether the insured’s death was accidental could be determined in Action No. 1, wherein both were defendants.
There are several questions to be answered in order to determine the disposition of these motions:
1. Was the decree of divorce, concededly signed by the court on December 17, 1971, sufficient to effect a divorce between the insured deceased and Dorothy as of that date, even though it was not formally entered in the Clerk’s office until March 13, 1972?
2. May an order now be entered nunc pro tune proclaiming the judgment entered on March 13,1972, effective as of December 17,1971?
3. Regardless of the answer to the first or second question, What is the effect of the designation of “ Dorothy A. Stanford, wife ” in the Hancock policy issued on September 17, 1971?
*784 4. What evidentiary weight on these motions may be accorded the certified copy of the “ Certificate of Death” which is with the papers?
5. Does the alleged fraud by Dorothy, claimed to have been practiced by her upon her then husband Willie Lee, bind Hancock so as to void the beneficiary designation?
With respect to the status of Dorothy at the date of death of Willie Lee on December 26, 1971, I conclude that she was his wife, and that the final divorce decision, as well as the decree, although signed by Mr. Justice Schuepp on December 17, 1971, were ineffective, because neither was entered or filed in the Clerk’s office until March 13, 1972. I further determine that the plaintiff’s application in Action No. 1 for an order mmc pro tune, notwithstanding his motion for summary judgment, must be denied.
Plaintiff cites Cornell v. Cornell (7 N Y 2d 164), Lynch v. Lynch (16 A D 2d 157, affd. 13 N Y 2d 615), and by reference, the same type of case, such as Jackman v. Jackman (258 App. Div. 838, mot. for lv. to app. den. 282 N. Y. 808), and Monacchio v. Monacchio (247 App. Div. 810).
All of these and similar cases arose when the Code of Civil Procedure and the Civil Practice Act provided for the entry of an interlocutory decree, and after three months, provided the court had not made an intervening order, the interlocutory judgment became final as of course, or a final judgment might also be entered.
In 1962 when the CPLR was enacted, these provisions were lifted from the Civil Practice Act and added to the Domestic Relations Law (§§ 241 and 242). Then by chapter 645 of the Laws of 1968, effective June 16, 1968, sections 241 and 242 of the Domestic Relations Law were repealed, and interlocutory judgments were abolished.
Subdivision (b) of CPLR 4213 requires the court to make an oral or written decision, which shall state the facts the court deems essential. CPLR 5016 provides for entry of the judgment in all types of actions, and since June, 1968, this applies to judgments in matrimonial actions, which are now final upon the entry thereof. In my view, the findings of fact and conclusions of law are the decision required by subdivision (b) of CPLR 4213, and the decree or judgment of djvorce being based upon such decision, cannot be effective until it is entered.
Subdivision (d) of CPLR 5016 provides in part: “if a party dies before entry of judgment and after * * * deei *785 sion * * * judgment shall be entered in the names of the original parties ”. In this case this was done in March, 1972.
The difficulty I see with plaintiff Kelvin’s position in urging that the judgment entered in March, 1972, be filed nunc pro tunp as of December 17, 1971, when they were signed, is this. In the cases of Cornell v. Cornell (7 N Y 2d 164, supra), Lynch v. Lynch (16 A D 2d 157, supra), Jackman v. Jackman (258 App. Div. 838, supra) and Monacchio v. Monacchio (247 App. Div. 810, supra), the decisions of the court were filed, and although filed as part of an interlocutory judgment, they gave notice to all that, barring a further court order, a divorce had taken place, and as of course the interlocutory decree would be the final decree of judgment after three months or 30 days thereafter, if a final judgment was to be entered.
It should be noted in Cornell v. Cornell {supra), that section 1774 of the Code of Civil Procedure stated in substance that no final judgment dissolving a marriage should be entered until after the expiration of three months after the filing of the decision of the court and that within 30 days after the expiration of said three months, final judgment shall be entered as of course upon said decision or report, unless for sufficient cause the court in the meantime should have otherwise ordered. The court did not otherwise order, but no final judgment was entered as provided by the interlocutory decree. The interlocutory judgment in Cornell (supra) did not provide that it should be the final judgment as of course, as permitted by the code. So this technicality was the problem. Fifteen years went by, and then Olive Cornell remarried a Mr. Irvin. Bight years later Mr. Cornell died, and 26 years after their marriage in 1930, Mr. Irvin died testate, whereby Olive Cornell Irvin was left out. The court on these facts permitted her to file an election to take against the will.
In Cornell v. Cornell (7 N Y 2d 164, 168, supra) the court points out: ‘ ‘ The basis for entry both of an interlocutory and final judgment of divorce is the decision of the court or the report of an Official Referee, and the entry of the judgment is the ministerial act of the clerk (Snell v. Snell, 177 Misc. 923), which is not altered by the circumstance that it is usually signed by the Justice of the court by whom the decision was made.” (Italics supplied).
Again on page 168, the court says: ‘1 The decision was the only authority for entering the judgment. ’ ’ (Italics supplied).
The point is that in all the nunc pro tune filings in the cases plaintiff cites, the decision was filed with the interlocutory *786 decree. A decision, I hold, must be filed before a judgment based upon it may become effective (see 16 N. Y. Jur., Domestic Relations, § 923).
Another reason for denying plaintiff Kelvin’s application to file nunc pro tune is suggested in Cornell (supra, p. 171) when the court states: “ Of course a nunc pro tune order of this nature would not be granted in situations where vested .rights are impaired”. (Italics supplied).
Vested rights or interests are not usually so construed in insurance policies, except when the right to change the beneficiary is not reserved, then the named beneficiary has an absolute vested interest in the policy (31 N. Y. Jur., Insurance, § 1463). Here the right to change the beneficiary was reserved. However, upon the death of Willie Lee, the vested defeasible' interest of the beneficiary ‘ ‘ Dorothy A. Stanford, wife ’ ’ ripened into a vested interest as far as líancock was concerned.
Dorothy A. Stanford, wife, was the beneficiary in any event in the Hancock policy. She was the insured’s wife on September 17, 1971, when the policy was issued. There is no question of misnomer here, and Hancock properly paid the life and term insurace to Milo Thomas, the assignee. It is undisputed that the beneficiary Dorothy A. Stanford is one and the same as Dorothy Colbert Stanford, a defendant in this action and the mother of the infant plaintiff Kelvin.
We now proceed to the evidentiary weight to be accorded the death certificate.
Richardson, Evidence ([9th ed.], § 366) has this to say in part: “ It is the rule in New York that a birth or death certificate is admissible as a public document only to show the fact of birth or death, and not as evidence of the additional facts recited therein pursuantxto law. There are, and have been, statutes and ordinances making these certificates presumptive evidence of their contents (see, for instance, Public Health Law, § 4103), but these statutory provisions have been construed not to apply to controversies between private persons * * # Thus, it has been held that a death certificate is not admissible as a public document to show the cause of death * * * A death certificate, however, is competent under the public documents exception to prove the fact of death as distinguished from its cause.”
However, Regan v. National Postal Transp. Assn. (53 Misc 2d 910, 904) takes a different view. In that case the death certificate contained also a “Medical Certification” prepared by the physician who had attended the deceased for more than *787 six months prior to his death by “ Suffocation, Foreign body in pharynx ’ ’. The court there permitted such certificate as proof of the cause of death as accidental.
In the present case the death certificate was issued by the Medical Examiner after an autopsy. The examiner lists the cause of death as “Acute Intravenous Narcotism ”, and at Part II, box 21.a. described the occasion as an “Accident”, as opposed to “ homicide, suicide, undetermined ”.
Therefore, on these motions, I hold that the term ‘ ‘ accident ’ ’ on the death certificate has no significance relating to the liability of either Hancock or Union. The effect of the inges: tian of alcohol as shown by the autopsy report handed to me (0.18% by weight in blood, and 0.27% by weight in urine) in relation to the overdose of drugs must await the trial (cf. Morgan v. Indemnity Ins. Co. of North Amer., 302 N. Y. 435).
The alleged fraud upon Willie Lee, said to have been induced by Dorothy in order to get him to take out a policy with Hancock, is not binding on Hancock so as to void the designation of a beneficiary. The copy of the application attached to the policy wherein “ Dorothy A. Stanford, wife ” is listed as beneficiary is regular in all respects. In addition, the Hancock policy covered both Dorothy and son Kelvin under a ‘1 Family Insurance ’ ’ plan. As required by the ‘ ‘ Family Insurance ’ ’ part of the policy, “ Dorothy Ann Stanford ” signed that application on September 17, 1971, before John Holland, Hancock’s agent and witness. There is no claim that fraud was practiced on Hancock, and therefore, the payment 'by Hancock to a duly designated assignee of Dorothy A. Stanford, the named beneficiary, was proper.
Accordingly, the motions are disposed of as follows:
Motion A: Granted. At the time of decedent’s death, Dorothy was his wife, and the findings of fact and conclusions of law and the decree of divorce may not be filed nrmc fro tune to take effect December 17, 1971, prior to the death of Willie Lee Stanford.
Motion B: Granted. The same reasoning applies as in Motion A. In addition, Dorothy was the designated beneficiary and the word ‘ ‘ wife ’ ’ after her name was of no consequence.
Motion C: Granted. The cause of action here relates to Union’s payment to Dorothy of the sum of $10,000 on its group life policy G-1083. Having ruled that Dorothy was the wife of the deceased insured, such payment to her was proper, and no action for a constructive trust, which I deem this to be, *788 lies in this cause of action, in view of my ruling (cf. Katzman v. Aetna Life Ins. Co., 309 N. Y. 197).
Motion D: Denied. The question of whether or not Willie Lee Stanford died as the result of an accident or came within the exclusions of the policy must await a trial of the issue. Summary judgment may not be granted upon the conclusion as to the cause of death upon the death certificate alone.
Motion E: Denied. Whether or not Willie Lee Stanford died by accidental means must await a trial of the issue. The conclusion on the death certificate that death was caused by ‘ ‘ Accident ’ ’ is not binding upon ‘ ‘ Union ’
Motion F: Denied, in accordance with this memorandum.