OPINION OF THE COURT
Raymond E. Cornelius, J.
This proceeding presents numerous, interesting issues, some of which are unique, and all of which arise as the result of an application to distribute the proceeds of a settlement for wrongful death of the decedent, Donna M. Avery. More specifically, these issues involve questions *819 concerning whether a child, who is in the physical custody of a former spouse by a previous marriage, suffers a pecuniary loss because of the wrongful death, whether the current spouse, who is also the petitioner and named administrator, should be disqualified because of a possible bigamous marriage and/or fraud in connection with the marriage, and finally, whether the same administrator should be disqualified from serving in such capacity because of felony convictions in another State.
The petition, which requests distribution of the proceeds, recites that the decedent, Donna M. Avery, had died on June 15, 1980, as the result of injuries sustained in an automobile accident on the same date, and that the subsequent action for damages had been settled, upon approval by order of Supreme Court, in the amount of $55,000. The application was made by Alan Avery, who had been named administrator by letters of administration, dated June 27, 1980, and who was also the surviving spouse of the decedent. In addition to Mr. Avery, two other distributees were identified by the petition, a daughter, Elizabeth Marie Avery, born on May 14, 1977, and a son by a previous marriage, Vincent Lester, born on September 3, 1974. In substance, the administrator requested that the proceeds of the wrongful death action, after payment of expenses, be distributed to the infant daughter and himself, but exclude the infant son on the basis that , he had not suffered any pecuniary injury as the result of his mother’s death.
An answer was interposed by Arnold W. Lester, on behalf of the infant, Vincent Lester, in which he alleged that he was the natural father of the child and a former husband of the deceased. In essence, it consisted of allegations, upon which was based a claim that the infant son, who had been in the physical custody of his father at the time of his mother’s death, had sustained a pecuniary injury. A hearing was commenced on the issues raised by the pleadings, and there were several adjournments before the proof was finally completed. During the course of the proceeding, by order to show cause dated May 7, 1981, an application was made by Arnold W. Lester for a decree revoking the letters of administration, which had theretofore been granted to Alan Avery, based upon an allegation *820 that the latter had been convicted of a felony, and therefore disqualified to serve as an administrator, and furthermore, that his marriage to Donna M. Avery was void.
Prior to his marriage to the decedent on October 29, 1975, the petitioner, Alan Avery, had been married three other times. The first and second marriages occurred outside of New York State, and there is nothing to indicate that these marriages were not validly terminated. A third marriage occurred in New York State, and was terminated by a divorce granted by Supreme Court on October 15, 1975, after the petitioner, herein, had defaulted and testimony had been given. The judgment of divorce, however, was not signed until October 30,1975 and was not entered until November 3, 1975, both of which dates postdate the marriage to the decedent. Although the judgment of divorce recites that the presiding Justice “made a decision in writing stating separately the facts found and the conclusions of law”, the records introduced into evidence, including the stenographic minutes, clearly show that the findings, conclusions and decision were made on the record on October 15, 1980.
In addition to the question whether the marriage between Alan Avery and the decedent was void, because of the entry of the divorce decree subsequent to the marriage, the issue is further complicated by the fact that he falsified certain information on the application for the marriage license. Specifically, he affirmed that his name was Alan Avery, born in Phoenix, Arizona, and had not previously been married. Although he allegedly, legally changed his name subsequent thereto, the name Alan Avery was an alias at the time of the marriage. In fact, the true name was Joe Rees Allen, he was born in the State of Kentucky, and as aforesaid, had been married on three previous occasions.
In 1968, the petitioner, herein, under his real name, Joe Rees Allen, was convicted in the State of Indiana for the commission of a theft while armed, and received a sentence in the Indiana State Prison. This criminal conviction was based upon an accusation that he, and others, during 1967, did “unlawfully and feloniously * * * touch, strike and wound michael gradison, a human being, by beating the *821 said michael gradison about the head with a pistol * * * and stomping and kicking * * * with the felonious intent then and thereby to kill the said michael gradison”. As vividly described by the petitioner, during his testimony in the instant proceeding, he and three other men were engaged in the burglary of a single-family dwelling, when one of the occupants returned home and surprised them. The petitioner positioned his truck in such a manner that this person was prevented from leaving, and thereafter, struck the victim about the face with his fists. The other accomplices, who were armed, also assaulted the victim, who was then left beside his car, on the ground. In addition, and prior to this incident, during 1956, Alan Avery was convicted of the crime of forgery, in another State, based upon the alteration of a personal check and retention of the proceeds.
Prior to her marriage to Alan Avery, the deceased had been married to Arnold W. Lester, and as aforesaid, one child, Vincent Joseph Lester, was born of this marriage on September 3, 1974. This marriage was terminated by a decree of divorce, dated September 8, 1975, which incorporated a separation agreement, by the terms of which, sole custody of the child was given to the deceased. The child resided with his mother, from 1975 to approximately January, 1978, at which time the father, Arnold W. Lester, assumed physical custody, after further proceedings held in Supreme Court. This change was effectuated, in part at least, because the mother moved, with her husband, the petitioner herein, to the State of Kentucky. She remained in that State for a short period of time before returning to the State of New York, and resided with her father, Vincent Gatlin, who therefore is the maternal grandfather of both minor children involved in this proceeding. This residence was continued for about 14 months, during part of which time, between April, 1978 and May, 1979, Alan Avery was incarcerated in the State of Indiana, as the result of his previous criminal convictions in that State. After release from prison, Alan Avery and the deceased resided together in the State of New York.
Between January, 1978 and Donna M. Avery’s death on June 15,1980, the child, Vincent Joseph Lester, continued *822 in the physical custody of his father. However, the issue of custody appears to have been far from finally settled. In approximately September, 1979, a custody proceeding was commenced in Family Court, by the decedent, but dismissed, apparently on the basis that the issue of permanent custody was still pending in Supreme Court. Between that time and her death, the decedent sought advice from, at least, two attorneys concerning the issue of custody of her son. Testimony by the petitioner, Alan Avery, to the effect that his wife made almost daily wishes for sole custody, and testimony by Vincent Catlin to the effect that his daughter was attempting to obtain full custody of her son, was uncontroverted.
The court also accepts testimony, given by the petitioner, that he and his, wife had supported the child, Vincent Lester, during the period of time, prior to 1978, when the child resided with them. Although the child’s father, Arnold W. Lester, was making support payments in the amount of $25 per week, during this period of time, Mr. Avery testified that part of this money was placed in a savings account and the remainder returned to Mr. Lester for payment on a second mortgage. It should be noted that the decedent was a licensed practical nurse, and, in fact, at the time of her death, was working between five and seven days per week and earning approximately $5 per hour.
After physical custody was transferred, during the early part of 1978, Mr. Lester assumed full responsibility for the support of his son, except during periods of visitation with the decedent, during which times she would assume responsibility. During 1978, the periods of visitation were quite frequent and extensive, consisting of two-week", alternating periods. The visitation remained frequent until June, 1979, after which time, there was less contact between the decedent and her son. During 1980, visitation occurred approximately five times, and Mrs. Avery last saw her son in March, approximately three months before her death.
There is no issue concerning the daughter, Elizabeth Marie Avery, who had resided with her mother and father, and accordingly, the court concludes that she has sustained a pecuniary injury, pursuant to the provisions of EPTL 5- *823 4.4, and should share in the proceeds of the wrongful death action. Based upon the above findings, the court has also concluded that the child, Vincent Lester, has also sustained a pecuniary injury, pursuant to the same section, and therefore, should share in the proceeds.
Generally, a pecuniary injury, under EPTL 5-4.4 is sustained by a distributee in situations where there is a “reasonable expectancy * * * of future assistance or support if life continues.” (Loetsch v New York City Omnibus Corp., 291 NY 308, 310.) On June 15, 1980, the date of death, the child, Vincent Lester, was not financially dependent upon his mother. Nevertheless, dependency is not the only basis for making a determination of a pecuniary damage to a distributee. (Gross v Abraham, 306 NY 525.) For example, it has been held that a child by a previous marriage, adopted, upon consent of the decedent, by the spouse of the decedent’s former wife, sustained a pecuniary damage although there was no obligation, by the decedent, to support the child. (Matter of Silverstein, 48 Misc 2d 1029.) In addition, a pecuniary loss may, of course, consist of money or financial support. (Wishart v Andress, 46 AD2d 998; Kelley v Cacace, 43 AD2d 573.) Conversely, however, a pecuniary loss may be represented by the loss of “a mother’s care and bounty”, or beneficial services. (See Gross v Abraham, supra; Matter of Mairowitz, 90 Misc 2d 854; Matter of Svibruck, 3 Misc 2d 607.)
Although the “reasonable expectancy” of a pecuniary loss may consist of prospective voluntary assistance, by the decedent to the distributee, an alternative factor may be the legal obligation to provide support. (Loetsch v New York City Omnibus Corp., supra; Matter of Pridell, 206 Misc 316.) This principle should take on new viability based upon relatively recent statutory amendments, such as section 413 of the Family Court Act and the repeal of section 414 of the Family Court Act, which were prompted by the decision in Orr v Orr (440 US 268). In the instant proceeding, if the decedent had eventually been unsuccessful in her attempts to regain physical custody of the child, this might nevertheless have constituted a sufficient change in circumstances to justify modification of the terms of the separation agreement, and thereby, impose *824 upon her, as mother, a legal duty of financial support. Conversely, if she were successful, there is no reason to believe that she would not have supported the child in the same manner as existed prior to 1978. Over and above these monetary considerations, of course, there was uncontroverted evidence of the “mother’s care and bounty”, which could be expected to continue in the future. Therefore, for all of these reasons, the court has concluded that the child, -Vincent Lester, had a reasonable expectancy of future assistance or support from his mother had she lived.
The amount of pecuniary injury to both children should be measured by the number of years until they reached the age of majority, to wit, 21 years of age, but the amount of distribution depends upon whether or not the petitioner should be disqualified from participation based upon a void marriage to the decedent. (EPTL 5-1.2.)
First, this court is of the opinion that the false statements, made by the petitioner, in order to secure the license to marry the decedent, should be treated no differently than the more common situation where a minor obtains a marriage license by false representations as to age. (See Foster-Freed, 1 Law and the Family, §2:13.) Although such acts would have subjected Alan Avery to a prosecution for perjury, there is no statutory provision making such marriage void, and accordingly, this court declines to invalidate the marriage on the basis of these misrepresentations.
Similarly, this court has concluded that the marriage between the petitioner and decedent was not void because the marriage occurred prior to the entry of the judgment of divorce. During the course of the hearing in the instant proceeding, the court sustained an objection to the introduction of a Supreme Court order, which had been obtained, signed and entered subsequent to the commencement of this hearing in Surrogate’s Court, and by the terms of which, the divorce became final and the decree entered nunc pro tunc as of the date the divorce was granted upon the record. The other parties, involved in this Surrogate’s proceeding, were not afforded notice or an opportunity to be heard, and therefore, the objection was sustained on this basis, because the nunc pro tunc order could not serve as *825 collateral estoppel to one of the issues to be decided in this hearing, namely, the validity of the subsequent marriage to the decedent. Counsel for the respondent, Arnold W. Lester, contends that the nunc pro tunc order is not appropriate, but this court would not have jurisdiction to reverse, or otherwise modify, that order. Nevertheless, neither consideration should preclude this court, in its discretion, to take judicial notice of the nunc pro tunc order, and for reasons hereinafter set forth, the order was appropriate.
In the pending proceeding, it is clear that the spouse of the petitioner, prior to his marriage to the decedent herein, was granted a divorce on October 15, 1975, and all that remained was the entry of the decree of divorce. Under the facts, this was a ministerial act, and an application by one of the parties for a nunc pro tunc order, and the granting thereof, was appropriate. (Davis v Davis, 75 AD2d 861; Jayson v Jayson, 54 AD2d 687.) Counsel for the respondent, however, cites Stanford v Union Labor Life Ins. Co. (74 Misc 2d 781), which in substance, held that a purported divorce is ineffective until formal entry of the decision and decree, and, therefore, application for a nunc pro tunc order is inappropriate and must be denied. The Justice, in the Stanford case, distinguished apparent, contrary holdings in a number of appellate decisions, such as Cornell v Cornell (7 NY2d 164) and Lynch v Lynch (16 AD2d 157, affd 13 NY2d 615) on the basis that these cases involved the former procedure of granting interlocutory decrees of divorce. Although it is true that these cases involved problems resulting from marriages subsequent to an interlocutory decree, but prior to the divorce becoming final, this court fails to see any significant distinction. In fact, the case of Lynch v Lynch involved a valid, interlocutory order, which was signed and entered subsequent to the court granting the divorce and which would have terminated the marriage, without further order of the court, three months from date of entry. Therefore, the court approved a nunc pro tunc order, making the divorce final as of the date it was granted, and thereby, validating a marriage which had occurred subsequent to the entry of the interlocutory order, but prior to the expiration of the *826 three-month period. In other words, the problem was created, as in the instant case, by delay in signing and entering the only order required.
Finally, although Alan Avery is not, for the foregoing reasons, disqualified from becoming a distributee, he must be disqualified as an administrator because he is “a felon”. (SCPA 707, subd 1, par [d].) Quite clearly, the crimes for which he was convicted in the State of Indiana, would constitute felonies in the State of New York, including, but not limited to, assault in the first degree, attempted murder, robbery in the first degree, forgery in the second degree, and criminal possession of a forged instrument in the second degree. The court makes no provision for payment of a commission because of Mr. Avery’s ineligibility to have served as an administrator. Arnold W. Lester has asserted, as part of the petition upon which the order to show cause of May 7, 1981 was granted, that he was qualified to act as an administrator because he is a parent of one of the infant children of the deceased. The court directs that Mr. Lester be named as administrator, and that the proceeds of the wrongful death action be distributed as hereinafter set forth.
The life expectancy for Alan Avery was 34.8 years, and the approximate years of dependency for the two infant children, Elizabeth Marie and Vincent, were 18 years and 15 years, respectively. Accordingly, using the guidelines of Matter of Kaiser (198 Misc 582) Alan Avery should receive 51.33%, the child, Elizabeth Marie, 26.55%, and the child, Vincent, 22.12%. As aforesaid, the total settlement of the wrongful death action was $55,000 and out of that amount, attorney’s fees in the amount of $16,634.31 should be paid to Bond and McDonald, and also, $20 for an ambulance charge, $3,482 for funeral expenses, and $300 for a headstone. Therefore, out of the balance of $34,563.69, and using the above-stated percentages, Alan Avery should receive $17,741.54, the child, Elizabeth Marie, $9,176.66, and the child, Vincent, $7,645.49. Pursuant to SCPA 2220 the amounts payable to the two infant children shall be deposited in the Lyons National Bank, subject to withdrawal only upon further order of this court *827 until the children reach their respective eighteenth birthdays.