■ ELISABETH W. FELL, Individually and as Administratrix of the Estate of PHILIP S. W. FELL, Deceased, Respondent, v PRESBYTERIAN HOSPITAL IN THE CITY OF NEW YORK AT COLUMBIA-PRESBYTERIAN MEDICAL CENTER et al., Appellants. — Order, Supreme Court, New York County (Stanley Parness, J.), entered October 13, 1982, denying so much of the motion and cross motion to direct plaintiff to produce the trust agreement under which decedent received yearly income to the time of his death in 1979, reversed, to the extent appealed from, on the law, the facts and in the exercise of discretion, without costs or disbursements, the motion and cross motion granted and plaintiff directed to produce said trust agreement within 10 days after service of a copy of the order to be entered on this appeal. The action was brought to recover damages for the wrongful death and the conscious pain and suffering of decedent, Philip Fell, who suffered cardiac arrest following a radium needle implant procedure performed at Columbia-Presbyterian Medical Center. Plaintiff alleged in her bill of particulars that decedent's average annual earnings for the five-year period prior to his death ranged from $122,709 to $159,207, testifying at her examination before trial that her husband's earnings during 1979, the year of his death, were approximately $250,000, all of which income was derived from family trust funds. Thereupon, defendants sought production of the trust agreement pursuant to which decedent received such income, admittedly his only income at the time of death. Plaintiff opposed the request, contending that the terms of the trust agreement were irrelevant to the issues in suit. We disagree with the refusal by Special Term to direct production of the trust agreement. The agreement may have a direct bearing upon the damage issues in the case, particularly where, as here, plaintiff's bill of particulars appears to claim a substantial loss of income, derived not from salary but from "family money," also defined as "trust funds." To the extent that plaintiff claims a loss

emanating from the trust income, it would be relevant, at the least for purposes of cross-examination and further preparation for trial, for the defendants to inquire into the terms of the trust. By production of the agreement defendants will be afforded the opportunity to discover the terms of the trust so as to ascertain what occurred upon decedent's death and whether plaintiff succeeded to the rights and interest of decedent as beneficiary, in whole or in part. The recoverable damages in a wrongful death action are limited to fair and just compensation for the "pecuniary injuries" suffered by the survivors of a decedent for whose benefit the action is brought (EPTL 5-4.3). Included as compensable damages are loss of support, services, voluntary assistance, the prospect of inheritance and medical and funeral expenses (Parilis v Feinstein, 49 NY2d 984; Gilliard v New York City Health & Hosps. Corp., 77 AD2d 532). In determining pecuniary loss, it is relevant to consider proof as to the age, character and condition of the decedent, his earning capacity, life expectancy, health and intelligence, as well as the circumstances of his distributees. Whether the trust income amounts to a collateral source or a "set-off" need not be resolved on this record. That issue is best reserved for resolution at trial or, at least, after the facts have been fully explored. Should it be established that the distributees have been deprived of trust income by reason of the death of the decedent, for example, if the trust income was now payable to some third party, clearly the terms of the trust would be material and relevant to the issues in suit. On the meager record before us, we cannot ascertain whether and to what extent plaintiff relies upon the loss of income from the trust. Suffice for the present purposes to observe that the terms of the trust may lead to discoverable evidence, a finding which under our liberal disclosure rules requires that the trust instrument be produced. Parties to an action are entitled to reasonable discovery "of any facts bearing on the controversy which will assist preparation for trial by sharpening the issues and reducing delay and prolixity." (Allen v Crowell-Collier Pub. Co., 21 NY2d 403, 406.) CPLR 3101 (subd [a]), which permits discovery of "all evidence material and necessary in the prosecution or defense of an action," has been most liberally construed, with the term "evidence" held to include that which is required in preparation for trial. Pretrial disclosure extends not only to admissible proof but also to testimony or documents which may lead to the disclosure of admissible proof (see Shutt v Pooley, 43 AD2d 59). As was there observed by Associate Justice (now Chief Judge) Cooke, "[i]f there is any possibility that the information is sought in good faith for possible use as evidence-in-chief or for cross-examination or in rebuttal, it should be considered evidence 'material' in the action [citing cases]". (43 AD2d, at p 60.) Applying the test of "usefulness and reason" adopted by the Court of Appeals in Allen v Crowell-Collier Pub. Co. (supra), we are in agreement that the appropriate preparation of the defense warrants production of the trust agreement under which decedent derived his sole income. Concur — Murphy, P. J., Asch and Kassal, JJ.

Fein and Milonas, JJ., dissent in a memorandum by Fein, J., as follows: I would affirm the order appealed from. An able and experienced Special Term Justice has ruled upon this discovery issue pursuant to the careful screening procedure set up at Special Term precisely for the purpose of dealing with such motions. That procedure was meticulously followed in this case and defendants were afforded adequate disclosure and discovery. In my view we should not interfere with Special Term's rulings on disclosure and discovery matters unless there is clear error and an abuse of discretion. Although this court obviously has the power to overrule Special Term, it should not be exercised in the absence of plain error. It cannot be denied that for many years disclosure and discovery were severely and arbitrarily limited without sound basis.

However, it is now recognized that all too often the problem is the abuse of discovery, not the limitations upon it. In this action for wrongful death and conscious pain and suffering of the decedent who suffered cardiac arrest following a radium needle implant procedure performed at Columbia-Presbyterian Medical Center, plaintiff has conceded, both by way of bill of particulars and on her deposition, that her deceased husband's earnings during 1979, the year of his death, were approximately $250,000, all of which income was derived from family trust funds. Defendants seek production of the trust agreement pursuant to which decedent received such income, concededly his only income at the time of death and for several years before. It is contended by defendants "that the disposition of the trust fund at Mr. Fell's death bears directly on plaintiff's claim for loss of support." This amounts to an assertion that to the extent that decedent's income came from the trust, and plaintiff and the next of kin may now become the beneficiaries of the trust, their recovery in this action should be appreciably reduced because their pecuniary loss is minimal. There is no basis in law for such conclusion. There is no authority for the conclusion that the recovery in this action for wrongful death is to be measured in whole or in part upon the basis of the fact that all or part of the corpus or the income from the trust may now pass to the plaintiff wife or the next of kin. The recoverable damages in a wrongful death action are limited to fair and just compensation for the "pecuniary injuries" suffered by the survivors of a decedent for whose benefit the action is brought (EPTL 5-4.3). Included as compensable damages are loss of support, services, voluntary assistance, the prospect of inheritance and medical and funeral expenses (*Parilis v Feinstein,* 49 NY2d 984; *Gilliard v New York City Health & Hosps. Corp.,* 77 AD2d 532). In fixing the value for "pecuniary loss" we are to consider decedent's age, sex, relationship to the person seeking recovery, earning capacity, life expectancy, health and intelligence and the number and characteristics of his distributees (Rohan, Practice Commentary, McKinney's Cons Laws of NY, Book 17B, EPTL 5-4.3, p 497). The law is well settled that the receipt of total or partial compensation from collateral sources, wholly independent of the wrongdoer for an injury wrongfully inflicted, does not operate to lessen the damages recoverable. The principle applies in wrongful death actions (*Closson v Griffith,* 219 App Div 163, affd 245 NY 552). The "question does not involve consideration of what they [the next of kin] might have received on account of his death. Thus * * * the fact that the beneficiary [next of kin] as a legatee or heir of the decedent would benefit from decedent's death may not be considered in connection with the measure of damages recoverable in a death action." (67 NY Jur, Wrongful Death, § 190, p 346.) Receipt by a beneficiary of a death benefit, annuity or pension cannot be used by the wrongdoer to set off an award to the beneficiary in the wrongful death action. Thus in *Terry v Jewett* (78 NY 338, 346), it was held that a Trial Judge in a wrongful death action did not err when he refused to instruct the jury that when estimating the damages it could consider the fact that plaintiff "would be entitled to the property of the deceased, of which she was the owner at the time of her death, as her next of kin, by reason of her death." This court in *Closson v Griffith (supra,* at p 168) quoted with approval the statement of the applicable rule from the opinion of General Term in *Terry v Jewett* (17 Hun 395, 403): " 'The request was but little less than asking the court to charge that the defendant, having benefited the plaintiff, by killing his daughter, and thus putting him in possession of her estate, is entitled to compensation for the service, in the shape of a reduction of the damages given by the statute. The request was properly refused.' " The court further stated (pp 167-168) as "the established law in this State that a jury may not consider the amount received by the next of kin through the death of a testatrix or under her will in

arriving at the compensation to be awarded." This court went on to state (p 168) that "the fact that as the result of the death of the testatrix these next of kin, as her legatees, have received substantial benefits under her will has nothing whatever to do with the pecuniary loss which they have sustained as the result of her death." To the same effect is *Circle Line Sightseeing Yachts v Storbeck* (325 F2d 338). If we are to change the law respecting recovery in wrongful death actions, we should not do so on a motion for discovery. I do not dispute the rule that discovery should be permitted if in any way it is possible to conclude that the information or document sought to be discovered may lead to admissible evidence and that the test is one of " 'usefulness and reason' " (*Shutt v Pooley*, 43 AD2d 59, 60; *Allen v Crowell-Collier Pub. Co.*, 21 NY2d 403, 406). Nothing in the trust agreement can lead to information which will assist preparation for trial by sharpening issues. It will only intrude irrelevant and prejudicial matters. Nor does the fact that this is a malpractice action alter the rule. The recently amended CPLR 4010 is not here involved. That section reads: "In any action for medical malpractice where the plaintiff seeks to recover for the cost of medical care, custodial care or rehabilitation services, loss of earnings or other economic loss, evidence shall be admissible * * * to establish that any such cost or expense was replaced or indemnified, in whole or in part from any collateral source such as insurance * * * social security * * * workers' compensation or employee benefit programs". Plainly this statute is designed to prevent plaintiffs from recovering twice on claims. It is clearly directed toward sources of indemnification designed to cover such loss. The next of kin, as beneficiaries of the trust, did not receive trust income or trust corpus as reimbursement for expenses incurred as a result of defendants' negligence or other malpractice. Their receipt of income or corpus is an incident of inheritance and survivorship. It is clearly beyond the scope of the statute. Moreover, it is irrelevant to the pecuniary loss EPTL 5-4.3 (subd [a]) is designed to cover.