24

REGINA A. KENAVAN et al., Respondents, v CITY OF NEW YORK et al., Appellants. (Action No. 1.)

ROBERT VERDONIK et al., Respondents, v CITY OF NEW YORK et al., Appellants. (Action No. 2.)

ANGELO VOLPICELLA et al., Respondents, v CITY OF NEW YORK et al., Appellants. (Action No. 3.)

Second Department, October 20, 1986

**APPEARANCES OF COUNSEL**

*Frederick A. O. Schwarz, Jr., Corporation Counsel (Fay Leoussis* and *Karen Hutson* of counsel), for City of New York, appellant.

*Pizzitola & DiBlasi, P. C. (Vincent A. DiBlasi* and *Lawrence B. Lame* of counsel), for William J. Gardell, appellant.

*Schneider, Kleinick & Weitz, P. C. (Brian J. Shoot, Harvey Weitz* and *Charles J. Nolet, Jr.,* of counsel), for Regina A. Kenavan and others, respondents.

*Lipsig, Sullivan & Liapakis, P. C. (Robert G. Sullivan* and *Pamela Anagnos Liapakis* of counsel), for Robert Verdonik and another, respondents.

*Kenneth Falk, P. C. (Weinraub & Haines [Sally Weinraub]* of counsel), for Angelo Volpicella and another, respondents.

## OPINION OF THE COURT

Per Curiam.

On January 24, 1976, at about 8:00 P.M., Engine Company 228 responded to a report of a fire in an abandoned car, which was located in the westbound parking lane of 37th Street, facing toward Seventh Avenue, in Brooklyn, New York. Captain Verdonik, as well as four other firefighters, i.e., Firefighters Kenavan, Costello, Ogno and Volpicella, responded to the call. Ogno, the driver, drove the fire truck about 15 to 30 feet past the burning car, and parked in front of it, with the rear of the fire truck protruding slightly into the westbound traffic lane. All of the fire truck's lights were on. After parking the fire truck, Ogno started to regulate the pressure on the water pump, and the other firefighters commenced their firefighting duties. There was quite a large amount of smoke generated by the fire. Captain Verdonik positioned himself in the middle of the street facing east, approximately 12 feet from the front of the burning car, which was to his left, and behind the fire truck. He also held a lantern in his hand which was visible at night from a distance of about 900 feet. Captain Verdonik then started walking east, i.e., towards Ninth Avenue waving the hand lantern and watching the oncoming traffic in order to warn them of the fire in the abandoned car. At this point, the firefighting operation, which had taken about 10 minutes, was winding down. Captain Verdonik noticed a car coming toward him and picking up speed in disregard of the lantern. He tried to warn his fellow firefighters, but it was to no avail. The car, driven by the defendant Gardell, who was later convicted of the crimes of manslaughter and assault, kept coming until it hit all of the firefighters. Firefighter Kenavan died of his injuries about 27 hours later.

Kenavan's estate and the other four injured firefighters, including two of their wives, commenced actions against Gardell and the City of New York. The actions against the City of New York which were tried together were based on theories of common-law negligence as well as the independent statutory cause of action contained in General Municipal Law § 205-a. Specifically, it was alleged that the defendant city had placed the firefighters in "a position of danger and jeopardy" by the improper parking of the fire truck, the failure to establish fire lines, and the failure to remove the abandoned car from the street before the fire.

In its charge, at the conclusion of all the evidence, the court

instructed the jury with regard to the plaintiffs' theories concerning the city's alleged common-law negligence as follows:

"[P]laintiffs contend that the City of New York is liable because of the * * * failure to remove the abandoned car which caught fire * * *

"Now, the municipality, they *[sic]* likewise have *[sic]* a duty. It is to maintain its roadways in reasonable and safe condition for reasonable, foreseeable use. And, a municipality must exercise due care in maintenance of their *[sic]* roadways.

"If you find that the municipality, the City, had actual or constructive notice of a dangerous condition, such as the vehicle on the roadway, abandoned vehicle on the roadway, it was required to take that action to correct that condition which a reasonably prudent person would have under the same circumstances; and provided it had such notice for a period of time prior to the occurrence, sufficient to permit it in the exercise of reasonable care to correct the danger, now, the City would be liable for the injuries resulting from its failure to do so * * *

"Another contention that the City is liable because of Captain Verdonik's failure to set up fire lines.

"And, three, another contention * * * that the City was liable for the actions of Fireman Ogno when he failed to place the truck in a proper position to insure the safety of himself and his men".

The court left it to the jury to decide whether the conduct of Captain Verdonik and Ogno in parking the truck and failing to set up fire lines was a question of professional judgment, for which the city could not be held liable. With regard to the plaintiffs' common-law causes of action, the jury was instructed on the principles of constructive and actual notice as well as proximate cause.

The court also instructed the jury with regard to the plaintiffs' independent statutory cause of action under General Municipal Law § 205-a. That statute provides, in pertinent part, that a firefighter has an independent statutory cause of action to recover damages for injuries or wrongful death caused "directly or indirectly as a result of any neglect * * * in failing to comply with the requirements of any of the statutes, ordinances, rules, orders and requirements of the federal, state, county, village, town or city governments or of any and all their departments, divisions and bureaus". In this

regard, the court instructed the jury that it could consider the city's alleged failure to comply with Vehicle and Traffic Law § 1224, Administrative Code of the City of New York, chapter 31, § 755[4]-3.0 [a], and General Order No. 5 of the New York City Department of Sanitation, which contain guidelines and procedures regarding the removal of abandoned cars from the city's streets. The court also instructed the jury that (1) under General Municipal Law § 205-a, the violation of any of these aforenoted legal requirements would result in liability if the violation was a direct or even an indirect cause of the accident, and (2) proximate cause was not a required element with respect to the statutory cause of action.

The jury was given a verdict sheet which contained the following questions under the heading "Common Law Action".

"1. Was the defendant, City of New York, negligent in failing to remove the abandoned car, and if so, was that negligence a proximate cause of the accident?

"2. Was the defendant, City of New York negligent in failing to establish 'Fire Lines', and if so, was that negligence a proximate cause of the accident?

"3. Was the defendant, City of New York negligent in failing to park the truck properly, and if so, was that negligence a proximate cause of the accident?

"4. Was the defendant, Gardell, negligent in the operation and control of his vehicle, and if so, was that negligence a proximate cause of the accident?

"5. Were * * * plaintiffs Ogno and Volpicella negligent, and if so, was that negligence a proximate cause of the accident?

"6. If your answers are 'yes' to questions 1, 2, 3, 4, or 5, then set forth the percentage of negligence of the parties named below, so that the sum adds up to 100%".

Under the heading "Statutory Cause of Action", the verdict sheet contained the following: "1. Did the defendant, City of New York, violate Section 1224 of the New York State Vehicle and Traffic Law; or Section 755(4)3.0 of the City Administrative Code; or Department of Sanitation General Order #5, and if so, was the violation a direct or indirect cause of the occurrence?"

The jury, in a unanimous finding, determined that the city was negligent in failing to remove the abandoned vehicle, failing to establish fire lines, and failing to park the fire truck properly, and that each of these acts of negligence was a proximate cause of the accident. It also determined that the

plaintiffs Ogno and Verdonik and defendant Gardell were guilty of negligence which was a proximate cause of the accident. It apportioned 70% of the culpability to the city, 20% to Gardell, 6% to Ogno and 4% to Verdonik. Finally, the jury found the city liable on the statutory cause of action.

■ The plaintiffs' causes of action against the city should have been dismissed as a matter of law, prior to their submission to the jury.

We first turn to the plaintiffs' theory that the defendant city was liable in common-law negligence in failing to remove the abandoned car. It is true that a municipality has a duty to keep public streets and sidewalks in a safe condition so that vehicular traffic and pedestrians may traverse them without fear of injury *(see, D'Ambrosio v City of New York,* 55 NY2d 454; *Green v State of New York,* 71 AD2d 761; *O'Neill v City of Port Jarvis,* 253 NY 423). However, in the case at bar, no liability may be imposed upon the city since there was no evidence adduced that any dangerous condition impending pedestrian or vehicular traffic existed. The abandoned car was not in the middle of the street or on the sidewalk. At all times it was parked in a lawful parking space and did not constitute a hindrance to motorists or pedestrians. Although the record supports a finding that the city had constructive notice of the abandoned car and failed to remove it, it is well established that "[p]ublic entities remain immune from negligence claims arising out of the performance of their governmental functions * * * unless the injured person establishes a special relationship with the entity, which would create a specific duty to protect that individual, and the individual relied on the performance of that duty" *(Miller v State of New York,* 62 NY2d 506, 510; *O'Connor v City of New York,* 58 NY2d 184; *Schrempf v State of New York,* 66 NY2d 289). In the case at bar, the removal of the abandoned car was a governmental function, and the plaintiffs failed to establish a special relationship with the city. Accordingly, as a matter of law, the city cannot be held liable in common-law negligence to the plaintiffs for failing to remove the abandoned car.

Nor can fault under a common-law theory of negligence be imposed upon the plaintiffs Verdonik and Ogno or upon the city upon the ground that the fire truck was improperly parked or that no fire line, or an improper fire line, was established.

With respect to the parking of the fire truck in front of the

burning car, both the driver, the plaintiff Ogno, and the plaintiff Captain Verdonik testified that the fire truck was parked in that position because it would be easier to stretch the hoses off the back of the truck directly onto the car fire rather than to pull the hose around the side of the truck as would have been the case if the truck had been parked behind the burning car. In addition, Ogno testified that he pulled past the abandoned car in order to avoid the possibility of an exploding gas tank. The plaintiffs' expert, in his testimony on this phase of the firefighting operation, stated that standard operating procedure called for the fire truck to be parked behind the burning car. However, this witness admitted that standard operating procedure could be modified "[u]nder extreme conditions", as when smoke and fire would be blowing right on the engine. In that circumstance, the witness testified that "[i]f an officer parks—orders the apparatus to be parked upwind you cannot fault him". In view of the testimony in the record that there was a lot of smoke from the abandoned car going across 37th Street, it is clear that Verdonik and Ogno were exercising their professional judgment when they decided to park the fire truck in front of the burning abandoned car, and out of the smoke zone. In this regard, the holding of *McGee v Adams Paper & Twine Co.* (26 AD2d 186, *affd* 20 NY2d 921), is particularly relevant. In that case, the court held that "the city and its officials may not be held liable for * * * errors of judgment on the part of the Fire Department officers in their conduct of the fire-fighting activities" *(McGee v Adams Paper & Twine Co., supra,* at p 197).

The holding in *McGee v Adams Paper & Twine Co. (supra)* mandates a similar conclusion regarding Verdonik's alleged failure to properly set up fire lines. Fire lines were defined by Captain Verdonik as "perimeters around the operation * * * depending on how big the fire is. It is spread out and we would keep anyone from entering that area". Captain Verdonik testified that it was standard fire department procedure to establish fire lines as soon as possible after reaching the fire scene. The question as to when a fire line should have been established was therefore clearly a matter of judgment. This was further established by Safety Bulletin No. 5 of the Division of Safety of the Fire Department of the City of New York, which was admitted into evidence and which states, *inter alia,* that certain practices might be unavoidable "[i]n the initial stages of fire fighting, *before* 'Fire Lines' have been established" (emphasis supplied). It is true that in the case at bar,

the plaintiffs' expert testified that a fire line "can be anything from police car barricades to a fireman with a light". Accordingly, the evidence showed, based on the testimony of Captain Verdonik and the plaintiffs' expert, that the city had, in fact, set up a fire line. Captain Verdonik also testified that the distance within which the fire lines were to be set up, varied depending on traffic and weather conditions, i.e., it was a question of judgment. Moreover, the only specific provision regarding the position of the fire line is contained in the Regulations of the Uniformed Force of the Fire Department § 11.5.21 (a) which provides that "Initial fire lines shall be established by the officer in command at a point beyond the furthest apparatus, whether operating or parked". Since the uncontradicted evidence indicated that Verdonik was initially standing in the street approximately 12 feet from the front of the burning car and behind the fire truck, and had in fact started walking east on 37th Street toward Ninth Avenue with his lantern at the time of the accident, no violation of this regulation was established and this theory of liability should not have been submitted to the jury.

We now turn to the plaintiffs' independent statutory cause of action under General Municipal Law § 205-a.

It has been consistently held that General Municipal Law § 205-a "is directed at property owners and those in control of property which is involved in a fire-fighting operation, who have violated an ordinance or statute" *(Gerhart v City of New York,* 56 AD2d 790, 791). It is true that General Municipal Law § 205-a does not, on the face, appear to limit the types of statutes, ordinances, rules, orders and requirements, which if violated, give rise to the statutory cause of action. Nevertheless, in *McGee v Adams Paper & Twine Co.* (26 AD2d 186, 195, *supra)* the court appeared to limit section 205-a to instances, where a "fire preventive" requirement was not complied with, stating specifically that: "The Legislature, in creating such additional cause of action, in the interests of protecting firemen against the hazards of such violations, may be considered as having intended to impose liability in any case where there is any practical or reasonable connection between a violation and the injury or death of a fireman. (See *Daggett* v. *Keshner,* 284 App. Div. 733 [Breitel, J.].) As the basis for a recovery under the statute, it is not necessary that the plaintiff show 'the same degree of proximate causal connection which we are accustomed to require in the field of negligence.' *(Daggett* v. *Keshner, supra,* p. 736.) Accordingly, it has been held that a

fireman is entitled to recover for injuries sustained in fighting a fire which was started as a result of a violation of a fire preventive ordinance. (See *Carroll* v. *Pellicio Bros.,* 44 Misc 2d 832.)" *(See also, Gannon v Royal Props.,* 285 App Div 131; *Carroll v Pellicio Bros.,* 44 Misc 2d 832.)

The plaintiff in *McGee (supra)* attempted to come within the purview of General Municipal Law § 205-a by alleging that the defendant had (1) violated the Administrative Code of the City of New York by smoking in a part of the premises which contained paper products which were "explosive or highly combustible or inflammable material" (Administrative Code of City of New York § C19-9.0), (2) maintained an illegal recreation room and (3) improperly nailed down a scuttle or hatchway which, when opened, served to ventilate the building and permit the escape of smoke, heat, and dangerous gases. With respect to the illegal recreation room, the court held that there was no evidence "that the existence of the recreation room, its type of construction or appurtenances contributed in any practical way to cause the fire or to appreciably hasten the spread thereof" *(McGee v Adams Paper & Twine Co., supra,* at p 195). The court also found that the ban on smoking contained in the Administrative Code, which clearly was meant to prevent fires, had not been violated since there was no proof that the paper products contained in the building were "explosive or highly combustible or inflammable" within the meaning of the ordinance. Finally, the court found that the failure to keep the scuttle opened, which clearly affected the efficiency of the firefighting operation, "was not shown to have been violative of any law or regulation" *(McGee v Adams Paper & Twine Co., supra,* at p 195).

The plaintiffs in the instant case have cited several cases where owners of property, including municipalities, have been held liable under General Municipal Law § 205-a based on violations of legal requirements which were not strictly "fire preventive" in nature *(see, Nykanen v City of New York,* 19 AD2d 535, *affd* 14 NY2d 697; *Mazelis v Wallerstein,* 51 AD2d 579). However, as the defendant city contends, these cases are distinguishable from the facts at bar in that they involve violations of legal requirements which created hidden traps or additional dangers, apart from the act of firefighting itself, to the firemen as they entered into, remained in, or exited from a building.

In sending the statutory cause of action under General Municipal Law § 205-a to the jury, the trial court relied on the

testimony in the record which indicated that the city had constructive notice of, but nevertheless failed to remove, the abandoned car, pursuant to Vehicle and Traffic Law § 1224, Administrative Code, chapter 31, § 755[4]-3.0 [a] and General Order No. 5 of the New York City Department of Sanitation. However, these legal requirements were clearly enacted and promulgated in order to enable the city to take title to abandoned cars for the limited purpose of removing these cars from the streets where they are eyesores, and, after giving proper notice, to sell the abandoned cars, without incurring any liability to the true owners of those cars *(see,* 1969 NY Legis Ann, at 465-466). Those legal requirements are not fire preventive in nature and the violations thereof were not practically or reasonably connected to the injuries suffered by the plaintiffs *(McGee v Adams Paper & Twine Co.,* 26 AD2d 186, *supra; see also, McAvoy v Di Leo,* 43 Misc 2d 164). Accordingly, the independent statutory cause of action pursuant to General Municipal Law § 205-a alleged by the plaintiffs, should not have been submitted to the jury.

■ In view of our determination regarding the city's lack of liability, as a matter of law, we need not dwell at length on the city's contention that the jury's award of $270,000 to the estate of Firefighter Kenavan for the "loss of parental care and guidance" was not a proper element of "pecuniary damages" *(see,* EPTL 5-4.3), which can be awarded in a wrongful death action. Suffice it to say, the city's argument is without merit. It is true that no recovery can be granted in a wrongful death action for loss of parental companionship *(see, Chong v New York City Tr. Auth.,* 83 AD2d 546). Indeed, the trial court correctly charged the jury on that point, viz., "you may not * * * award for * * * loss of companionship". However, it has "long been recognized that pecuniary advantage results as well from parental nurture and care, from physical, moral and intellectual training, and that the loss of those benefits may be considered within the calculation of 'pecuniary injury' " *(DeLong v County of Erie,* 89 AD2d 376, 386, *affd* 60 NY2d 296; *see also, Gonzalez v New York City Health & Hosps. Corp.,* 98 AD2d 685). The court therefore properly charged on this issue, stating: "You must also take into consideration the intellectual, moral, and physical training, guidance and assistance he would have given the children had he lived". The jury's verdict on this item of damages was therefore proper.

■ Although we have dismissed the plaintiffs' causes of

action against the defendant city, there was ample evidence in the record to support the jury's verdict against the defendant Gardell. Nevertheless, the damages awarded to each of the plaintiffs were clearly excessive. As but one illustration of these excessive awards, the jury awarded the estate of Firefighter Kenavan the sum of $250,000 for conscious pain and suffering. Firefighter Kenavan was admitted to the hospital at about 8:30 P.M., approximately one half hour after reaching the fire, was unconscious on arrival, and remained so until his death over 24 hours later. Moreover, the expert witness called by his estate testified that (1) there existed five levels of consciousness which, in ascending order, contained decreasing responses to pain, and (2) Kenavan, at the time of his arrival at the hospital, was "in either state three, possibly earlier four" which the expert defined as follows:

"Level three is somewhat below that. Now the individual is unconscious, that is not responsive to the outside world, but still has a response to pain so that in level three a painful stimulus will evoke a response such as a pinch on the arm, the arm will be withdrawn. A pinch on the leg or a stick with the needle. The leg will be withdrawn. An attempt to put a tube down the mouth, the unconscious patient will try to push it away with his hand. This is called a response to noxious or painful stimuli.

"Level four is one level below this. Now, there is little response to pain but still some".

We therefore remit for a new trial on damages as between the plaintiffs and the defendant Gardell. As heretofore noted, as a matter of law, the city cannot be found at fault for failing to remove the car. Further, as a matter of law, no fault under a common-law theory of negligence may be imposed in this case upon the plaintiffs Verdonik and Ogno or upon the defendant City of New York based upon the alleged misconduct of these plaintiffs in parking the fire truck and setting up a fire line (see, McGee v Adams Paper & Twine Co., supra). Therefore, Gardell must bear full responsibility for the accident, and a new trial on the issue of apportionment of fault is unnecessary.

Accordingly, the judgment appealed from should be reversed, the actions dismissed insofar as they are asserted against the defendant City of New York, and a new trial granted to the defendant Gardell solely on the issue of damages.

MANGANO, J. P., BROWN, LAWRENCE and KOOPER, JJ., concur.

Justice Kooper has been substituted for the late Justice Gibbons *(see,* 22 NYCRR 670.2 [c]).

Ordered that the judgment of the Supreme Court, Kings County, entered May 7, 1984, is reversed, on the law and the facts, without costs or disbursements, the actions are dismissed insofar as they are asserted against the City of New York, the actions insofar as they are asserted against the defendant Gardell are severed, and a new trial is granted to the defendant Gardell solely on the issue of damages. The findings of fact with respect to the issue of the defendant Gardell's liability are affirmed.