849 F.2d 46
 Mary L. McKEE, as Executrix under the Will of Gordon N.
McKee, Deceased, Plaintiff-Appellee,
v.
COLT ELECTRONICS CO., INC., the Garrett Corporation and
Lockheed Corporation, Defendants,
the Lockheed Corporation and Phoenix Aerospace, Inc.,
Defendants-Appellants.
The GARRETT CORPORATION and
Lockheed Corporation,
Third-Party Plaintiffs,
v.
TEXASGULF, INC., and Texasgulf Aviation, Inc., Third-Party
Defendants- Appellants.
 No. 628, Docket 87-7774.
 United States Court of Appeals,
Second Circuit.
 Argued Feb. 25, 1988.
Decided May 27, 1988.
 
 Richard F. Lawler, New York City (Whitman & Ransom, John M. Newell, of counsel), for plaintiff-appellee.
 Randal R. Craft, Jr., New York City (Haight, Gardner, Poor & Havens, John P. Marinan, of counsel), for third-party defendants-appellants, Texasgulf, Inc. and Texasgulf Aviation, Inc.
 Perkins Coie, Seattle, Wash. (Sherilyn Peterson, Richard C. Coyle, of counsel), for defendant-appellant Garrett Corp.
 Before FEINBERG, Chief Judge, PRATT, Circuit Judge, and PETER C. DORSEY, United States District Judge for the District of Connecticut, sitting by designation.
 GEORGE C. PRATT, Circuit Judge:
 
 
 1
 This appeal from a damage award is part of the litigation that arose out of the 1981 crash at Westchester County Airport of a corporate jet owned by third-party defendants Texasgulf, Inc., and its wholly-owned subsidiary, Texasgulf Aviation, Inc. (collectively, "Texasgulf"). Plaintiff's decedent, Gordon McKee, who was the vice-president/treasurer of Texasgulf, was among the six passengers killed in that crash.
 
 
 2
 The estates of the crash victims filed suits pursuant to New York's wrongful death statute, N.Y.Est. Powers & Trust Law Sec. 5-4.3 (McKinney 1981), the cases were consolidated, and Judge Goettel presided over two jury trials that were held to resolve affirmative defenses and to determine liability. The factual and procedural histories of these cases are outlined more fully in Woodling v. Garrett Corp., 813 F.2d 543 (2d Cir.1987); Texasgulf, Inc. v. Colt Electronics Co., 615 F.Supp. 648 (S.D.N.Y.1984); Morgan Guaranty Trust Co. v. Texasgulf Aviation, Inc., 604 F.Supp. 699 (S.D.N.Y.1985); Gregory v. Garrett Corp., 589 F.Supp. 296 (S.D.N.Y.1984), aff'd in part and vacated in part, 813 F.2d 543 (2d Cir.1987).
 
 
 3
 The jury found the defendants and third-party defendants jointly and severally liable for negligently causing the crash, and apportioned liability as follows: Texasgulf (owned and operated the aircraft), 70%; Garrett Corporation (installed generator control units), 20%; Phoenix Aerospace, Inc. (designed and manufactured generator control units), 5%; and Colt Electronics Co., Inc. (prepared installation drawings), 5%. We upheld that liability verdict in Woodling v. Garrett, 813 F.2d 543. After those issues were resolved, some of the cases settled, and damage trials were held in others, including McKee's.
 
 
 4
 During the McKee damages trial, plaintiffs introduced evidence to show that McKee was survived by his wife Mary and four children, who were 22, 21, 18 and 14 when he died. Mrs. McKee died prior to trial, but her videotaped deposition was shown to the jury. McKee was an athletic, vigorous man and a devoted father who was actively involved with his children. McKee's concern for his children's education was demonstrated by his decision to send them to private school, his service as trustee of the youngest child's school, his commitment to finance their graduate education, and his frequent discussions with the children concerning their educations and careers. In fact, the two older McKee children pursued careers in geology and finance, respectively, fields in which McKee, who was also highly respected in the New York financial community, specialized. The third child has since completed her undergraduate education, and the youngest is now in college.
 
 
 5
 Both sides presented expert economic testimony on the issues of lost earnings, McKee's personal expenses, and the value of McKee's household services. Responding to special interrogatories, the jury awarded damages as follows:
 
 
 6
 loss of financial support $1,763,700
loss of care, guidance, training and education 294,000
lost household and other services 13,900
funeral and burial expenses 5,168
 ----------
 Total $2,076,768
 
 
 7
 Judge Goettel denied defendants' and third-party defendants' motions to set aside the damages verdict as contrary to the evidence and excessive.
 
 
 8
 Two of the many issues raised on appeal warrant discussion here. The first concerns Judge Goettel's exclusion of certain evidence of McKee's prospective income tax liability and his refusal to instruct the jury to reduce any award to account for income tax liability. The second concerns the amount of the award for loss of parental nurture, care, and guidance.
 
 
 9
 I. Income Taxes.
 
 
 10
 In Woodling v. Garrett Corp., 813 F.2d 543, 557 (2d Cir.1987), a case arising from the death of a 34-year old accountant who was also aboard the Texasgulf plane, we held that the trial court erred in admitting evidence as to income tax the decedent would have had to pay on projected future earnings and in instructing the jury that it should deduct income taxes from the decedent's projected gross income in calculating the amount that the plaintiff was entitled to recover for lost support. We refused to overrule Vasina v. Grumman Corp., 644 F.2d 112 (2d Cir.1981), where we had held that New York law does not allow evidence of the effect of taxes on lost income, and interpreted Coleman v. New York City Transit Authority, 37 N.Y.2d 137, 371 N.Y.S.2d 663, 332 N.E.2d 850 (1975), as barring both jury instructions on nontaxability of damage awards and evidence of the effect of taxes on prospective income. 813 F.2d at 557-58.
 
 
 11
 Unwilling to accept defeat on this issue even in the face of our broad and seemingly unambiguous holding in Woodling, defendants now advance a variation of their Woodling argument in the form of a proffered "McWeeney high-income earner exception" which, defendants argue, requires juries to consider the effect of income taxes in cases involving "high-income earners." See McWeeney v. New York, N.H. & H.R.R. Co., 282 F.2d 34, 38-39 (2d Cir.), cert. denied, 364 U.S. 870, 81 S.Ct. 115, 5 L.Ed.2d 93 (1960). In McWeeney, we held that "where the question is one of federal law or the applicable state law is silent," the jury should not be allowed to consider the effect of taxes on earnings. Id. at 39. Writing for the panel, Judge Friendly suggested, however, that in a "limited class of cases" involving high-income earners whose earnings would have been largely consumed by income taxes, "the court may properly give some charge or, perhaps better, use the tools provided by Fed.R.Civ.Proc. 49," and set aside an excessive verdict. Id. at 38. From this dictum, and in spite of the fact that the applicable state law is not silent, defendants seek to extrapolate what they call the "McWeeney high-income earner exception rule".
 
 
 12
 We need not address whether this "rule" actually existed, or, if it did, whether it survived Vasina and Woodling, because, while this appeal was pending, the New York State Court of Appeals decided two cases that clarify New York's position on both the evidentiary and jury instruction issues. In Johnson v. Manhattan & Bronx Surface Transit Operating Auth., 71 N.Y.2d 198, 206, 524 N.Y.S.2d 415, 519 N.E.2d 326 (1988), the court held "that without express statutory direction to the contrary, the damages component of a plaintiff's award should be based on gross projected earnings and no deduction or consideration of after-tax net income should be allowed into evidence or charged to the jury." In Lanzano v. City of New York, 71 N.Y.2d 208, 210, 524 N.Y.S.2d 420, 519 N.E.2d 331 (1988), the court held there was no error when the trial court instructed the jury that the damages award would not be subject to taxation and that the jury should not consider tax consequences when it calculated damages. The court further "express[ed the] preference that the charge state a specific direction not to add or subtract from an award because of the non-taxability of the award." Id. at 213, 524 N.Y.S.2d 420, 519 N.E.2d 331.
 
 
 13
 Because the Johnson language leaves no unresolved area in which a "McWeeney rule" might operate, it is now abundantly clear that under New York law the calculation of plaintiff's damages must be made as if taxes did not exist.
 
 
 14
 Defendants argue further, however, that Judge Goettel erred in allowing plaintiff's expert economist, Dr. Martin, to use data based on net earnings, obtained from the Bureau of Labor Statistics, as a basis for calculating McKee's personal living expenses. At oral argument defendants suggested that if the tax-free world of Johnson did apply to this case, then it rendered Dr. Martin's testimony, one part of which relied on after-tax income, inadmissible as a matter of law. We do not believe that such a result is required or anticipated by Johnson.
 
 
 15
 New York's rule reflects a policy choice made for reasons that are, perhaps, best understood by its own legislators and judges. However desirable may be New York's fictional tax-free world when calculating lost hypothetical future income, such a fiction nevertheless collides harshly with the real world when we seek to determine, in the context of a wrongful death suit, the amount of income a decedent actually spent on himself. While the calculation of damages based on future lost wages is necessarily theoretical and prospective, one of its factors, the amount of decedent's personal expenditures, is based on historical fact that cannot be calculated accurately without reference to past realities, including the realities of income taxes. Determining damages is a difficult enough task; juries should not also be required to speculate as to how the decedent might have lived in the absence of taxes. Such speculation would not only complicate the jury's already difficult task, but would also distort the jury's basic factfinding objective. Neither Johnson nor Woodling, both of which dealt only with whether tax evidence should have reduced "anticipated future earnings", 813 F.2d at 558 (emphasis added), requires such an approach to personal expenses. Furthermore, to adopt such a rule would mean that plaintiffs would be unable to use their best evidence of past expenditures, actual records, because those expenditures are necessarily a function of the decedent's available after-tax income.
 
 
 16
 In this case Dr. Martin, using figures based on after-tax income, calculated the amount that McKee had spent on himself in the past and subtracted that personal expenditure figure from the income that otherwise was available to support McKee's dependents. From there he projected what McKee would have spent on his children, had he lived. We find no error in this approach. Moreover, after Dr. Martin had testified on direct examination, Judge Goettel excused the jury and conducted a voir dire examination in order to ascertain whether, and how, Dr. Martin's calculations may have involved taxes. Defense counsel did not then object to Dr. Martin's testimony, see Fed.R.Civ.P. 51, but instead argued that plaintiffs had "opened the door [to the] tax issue." Appendix at 180. Defense counsel apparently made the tactical choice to pursue what he perceived as an opportunity to get the "tax issue" before the jury, rather than to object to Dr. Martin's testimony. Thereafter, Judge Goettel permitted defense counsel to freely cross-examine Dr. Martin about his methodology, including his use of after-tax figures to calculate past personal expenditures. Any limitation on that cross-examination was not imposed by Judge Goettel but by defense counsel himself.
 
 
 17
 We set forth our holding on this issue as follows, in order to avoid more repetitive litigation of these issues. We hold that: (1) under New York law the calculation of future lost wages as a component of a plaintiff's damage award must be based on projected gross earnings with no consideration of after-tax income either allowed into evidence or charged to the jury; and (2) New York law does not preclude a calculation of decedent's past personal expenditures based on after-tax figures, even though evidence of these past personal expenditures may be considered by the jury as a factor in estimating what the decedent would have spent on his survivors over the remainder of his normal life span.II. Lost Nuture, Care, and Guidance.
 
 
 18
 Defendants launch a two-fold attack on the award for lost nurture, care, and guidance. First, they contend that under New York law a recovery for the pecuniary injury that results from the loss of a parent's nurture, care, and guidance is available to only minor children. Second, defendants argue that the $294,000 award was excessive and unsupported by a specific showing of pecuniary loss. Neither argument has merit.
 
 
 19
 Under New York law, wrongful death damages are limited to "fair compensation for the pecuniary injuries resulting from the decedent's death to the persons for whose benefit the action is brought." N.Y.Est. Powers & Trust Law Sec. 5-4.3(a) (McKinney 1981). See Parilis v. Feinstein, 49 N.Y.2d 984, 985, 429 N.Y.S.2d 165, 166, 406 N.E.2d 1059, 1060 (1980). The statute does not permit recovery for grief or for "loss of society, affection and conjugal fellowship--all elements of the generic phrase 'loss of consortium.' " Liff v. Schildkrout, 49 N.Y.2d 622, 633, 427 N.Y.S.2d 746, 750, 404 N.E.2d 1288, 1292 (1980). See Kenavan v. City of New York, 120 A.D.2d 24, 33, 507 N.Y.S.2d 193, 200 (2d Dep't 1986) (no recovery for loss of parental companionship), aff'd, 70 N.Y.2d 558, 523 N.Y.S.2d 60, 517 N.E.2d 872 (1987); see also O'Rourke v. Eastern Airlines, Inc., 730 F.2d 842, 847 (2d Cir.1984) (no recovery for loss of consortium or grief).
 
 
 20
 Although children may not recover for loss of a parent's companionship, they may recover for the pecuniary loss suffered as a result of the lost nurture, care, and guidance they would have received if the parent had lived. See Tilley v. Hudson River R.R. Co., 29 N.Y. 252, 285-86 (1864), earlier appeal, 24 N.Y. 471 (1862); DeLong v. County of Erie, 89 A.D.2d 376, 386, 455 N.Y.S.2d 887, 893 (4th Dep't 1982), aff'd, 60 N.Y.2d 296, 469 N.Y.S.2d 611, 457 N.E.2d 717 (1983); Kenavan, 120 A.D.2d at 33, 507 N.Y.S.2d at 199-200; Juiditta v. Bethlehem Steel Corp., 75 A.D.2d 126, 139, 428 N.Y.S.2d 535, 543 (4th Dep't 1980); Zaninovich v. Amer. Airlines, Inc., 26 A.D.2d 155, 161, 271 N.Y.S.2d 866, 873 (1st Dep't 1966).
 
 
 21
 The key requirement for recovery under New York's statutory scheme, therefore, is proof of pecuniary loss. There is no prohibition barring recovery by an adult child. As long ago as 1864, the New York Court of Appeals held that damages for pecuniary injuries, including those for the loss of training, counsel, and instruction that would be provided by a parent, could be awarded to children who were past the age of minority. Tilley, 29 N.Y. at 287. The court emphasized that the jury was free to award damages for pecuniary injuries for "loss of bodily care, or intellectual culture, or moral training," id. at 286, and that there was no "sufficient legal reason for limiting the damages to the minority of the children, if the jury are legally persuaded that they would continue after that age." Id. at 287. Tilley, which continues to be followed by New York courts, see Gross v. Abraham, 306 N.Y. 525, 531, 119 N.E.2d 370 (1954) (citing Tilley, 24 N.Y. 471, 474); DeLong v. County of Erie, 89 A.D.2d at 386, 455 N.Y.S.2d at 893 (citing Tilley, 24 N.Y. 471); Juiditta v. Bethlehem Steel Corp., 75 A.D.2d at 139, 428 N.Y.S.2d at 543 (citing Tilley, 29 N.Y. 252), is still good law.
 
 
 22
 More recent cases emphasize that dependency and minority are not prerequisites to recovery for pecuniary injury under New York's wrongful death law. In Gross v. Abraham, 306 N.Y. at 531, 119 N.E.2d 370, the New York Court of Appeals held that a person who was not a dependent could, nevertheless, sustain pecuniary injury under Sec. 133 of the Decedent Estate Law, the predecessor to N.Y.Est. Powers & Trust Law Sec. 5-4.4 (McKinney 1981) (distribution of damages recovered). The court noted that Sec. 133 imposed only two requirements on someone seeking a share in the proceeds of a wrongful death action: membership in the class of "next of kin" and proof of pecuniary loss or injury. Id. at 530, 119 N.E.2d 370. Concluding that "dependency is not the only basis for consideration when arriving at the pecuniary damages suffered by a 'next of kin' ", id. at 531, 119 N.E.2d 370; accord In re Avery, 111 Misc.2d 818, 823, 445 N.Y.S.2d 672, 675 (Surr.Ct. Wayne Cty.1981); In re Giambertone's Estate, 38 Misc.2d 784, 786, 238 N.Y.S.2d 883, 885 (Surr.Ct. Suffolk Cty.1963), the court affirmed an apportionment of a wrongful death award that gave 85% to the wife and 15% to a 39-year old self-supporting son. See id., 306 N.Y. at 528, 119 N.E.2d 370.
 
 
 23
 Within the last two years New York courts have permitted adult children to recover for other pecuniary losses suffered as a result of a parent's death. See Korman v. Pub. Serv. Truck Renting, Inc., 116 A.D.2d 631, 632, 497 N.Y.S.2d 480, 481 (2d Dep't 1986) (where decedent performed household duties and "provided love, guidance and advice" to adult sons, sufficient proof of pecuniary loss to sustain cause of action for wrongful death); Wood v. State of New York, 112 A.D.2d 612, 615, 492 N.Y.S.2d 481, 484 (3d Dep't 1985) (where evidence indicated that decedents were "loving parents who helped their children in every way possible", adult children recovered $25,000 each, even though no proof of financial assistance from parents to children). See also Circle Line Sightseeing Yachts, Inc. v. Storbeck, 325 F.2d 338, 339 (2d Cir.1963) (under New York law, adult child is entitled to recover for loss of mother's services and companionship as babysitter for grandchild). Thus, New York law allows children of any age to recover for pecuniary injury derived from loss of a parent's contribution to income or household services; we do not believe that New York prohibits the same children from recovering proven pecuniary losses for nurture, care, and guidance.
 
 
 24
 Our belief is further supported by the fact that, rather than formulating bright-line rules limiting recovery for certain types of pecuniary injuries, New York courts have emphasized that each case must be decided on its merits. See DeLong, 89 A.D.2d at 386, 455 N.Y.S.2d at 893 (since " 'an infinite variety of human characteristics and family situations affect the numerous factors which must be examined, each case must be viewed on its own merits' ") (citation omitted); Griscti v. State of New York, 35 A.D.2d 764, 764, 314 N.Y.S.2d 932, 933 (3d Dep't 1970) ("comparison with other cases is not really too useful since each case depends on its own merits"), aff'd, 30 N.Y.2d 782, 334 N.Y.S.2d 175, 285 N.E.2d 318 (1972); Riley v. Capital Airlines, 42 Misc.2d 194, 210, 247 N.Y.S.2d 427, 445 (Sup.Ct. Monroe Cty.1963) (while "prior adjudications * * * may offer some guide * * * each case must stand on its own merits").
 
 
 25
 Bumpurs v. New York City Housing Auth., 134 A.D.2d 211, 521 N.Y.S.2d 12 (1st Dep't 1987), relied on by defendants, does not accurately express the New York rule in this area. There, adult children appealed from the dismissal of their claim for loss of their mother's "companionship, comfort and assistance." 134 A.D.2d at 213, 521 N.Y.S.2d at 13. The court held that such a claim fell within the "nonpecuniary area typical of a loss of consortium claim" and was therefore properly dismissed. Id. at 213, 521 N.Y.S.2d at 13. The court added, in what might be considered either as dicta or an alternative holding, that because these children were adults, they could not advance a "loss of nurture" claim either. Id. at 213, 521 N.Y.S.2d at 13. The sole authority cited for this proposition, however, was a New York Civil Practice commentary, which cites only cases where minor children did recover for loss of parental care and guidance. Moreover, none of those cases squarely addressed the issue presented here--whether New York law absolutely prohibits children who are no longer minors from proving, and recovering for, pecuniary injury for the loss of a parent's nurture, care, and guidance. In one of the cases, the court noted that pecuniary losses did include the value of parental guidance, advice and care, and, in the next paragraph, stated that pecuniary loss after majority should be considered. Zaninovich, 26 A.D.2d at 161, 271 N.Y.S.2d at 873. Given this state of the law, until the New York courts have spoken authoritatively on the subject, we will not restrict recoveries for lost nurture, care, and guidance to minor children only.
 
 
 26
 We note further that defendants did not request a jury instruction that children past the age of minority cannot, as a matter of law, recover for lost nurture, care, and guidance. Nor did they object to the charge that was given, which instructed the jury that they could award damages for pecuniary injury due to loss of care, guidance, training and education, after considering all the evidence, "including the children's ages and the numbers of years each would have probably benefitted from such care and guidance." This charge properly alerted the jury to its duty to determine as an issue of fact whether the older children would have continued to benefit from their father's nurture, care, and guidance. But even if the charge were improper, defendants' failure to object to the charge would by itself preclude reversal on this ground.
 
 
 27
 Finally, we think that the evidence was sufficient to support the award, which was not excessive under the circumstances. New York courts have long recognized that proof of future losses is, by necessity, "indefinite, prospective, and contingent." Houghkirk v. Delaware Hudson Canal Co., 92 N.Y. 219, 225 (1883). See Riley v. Capital Airlines, 42 Misc.2d at 210, 247 N.Y.S.2d at 445 (" 'there is no mathematical formula for computing damages' " in a wrongful death case) (citation omitted); accord Lucivero v. Long Island R.R. Co., 22 Misc.2d 674, 675, 200 N.Y.S.2d 728, 730 (Sup.Ct. Kings Cty.1960). Furthermore, because direct evidence of pecuniary injury is often unavailable, "calculation of pecuniary loss is a matter resting squarely within the province of the jury." Parilis v. Feinstein, 49 N.Y.2d at 985, 429 N.Y.S.2d at 166, 406 N.E.2d at 1060. The factors to be considered by the jury include the age, character, earning capacity, health, intelligence, and life expectancy of the decedent, Fell v. Presbyterian Hosp. in the City of New York at Columbia-Presbyterian Medical Center, 98 A.D.2d 624, 625, 469 N.Y.S.2d 375, 377 (1st Dep't 1983), as well as the degree of dependency of the distributees upon the decedent and the probable benefits they would have received but for the untimely death, see Woodard v. Pancio, 65 A.D.2d 923, 924, 410 N.Y.S.2d 454, 456 (4th Dep't 1978); see also DeLong, 88 A.D.2d at 376, 455 N.Y.S.2d at 893 (courts consider "myriad factors, including the decedent's age, relationship to person seeking recovery, earning capacity and life expectancy").
 
 
 28
 This jury could have determined that McKee was a well-educated and successful businessman who valued education, advised his children about educational and career choices, served as a trustee to his youngest daughter's school, and sought to impart his own values to his children by being kind and attentive, while requiring them to earn money for themselves. Clearly, the values to which he adhered had served this man well, and it was reasonable for the jury to conclude that if McKee had lived, each of his children would have received further training, care, guidance and education from which pecuniary benefit would have flowed.
 
 
 29
 Although the two younger children clearly suffered the greater loss in terms of years of deprivation, the jury could reasonably have concluded that the older children, who were at the college, graduate school, and fledgling career stages, suffered pecuniary losses as well. We do not agree with defense counsel that by affirming we would be sanctioning damages for loss of "influence-peddling". Rather, we recognize, as the jury must have, both "the greater and greater dollar value of a human life", Lucivero, 22 Misc.2d at 675, 200 N.Y.S.2d at 730, and the realities of an increasingly complex society where children rely more heavily, and for a greater number of years, on the guidance of their parents.
 
 
 30
 We have considered the defendants' other contentions and find them also to be without merit. The judgment of the district court is affirmed.
 
 
 31
 DORSEY, District Judge, concurring in the result.
 
 
 32
 I concur with the majority opinion in all respects except in its resolution of appellants' claim of error in the failure to exclude testimony of plaintiff's expert economist, Dr. Martin. In relevant part, Dr. Martin testified as to the amount of money Gordon McKee would have had available by subtracting his projected personal expenses from his projected gross income. He projected decedent's living expenses on the basis of after tax income on the theory that the amount of money one would spend for living expenses would be directly proportional to the amount of money at his disposal, viz, the net income remaining after one's tax obligations had been met. The income thus available was derived by reducing McKee's gross income solely by the living expenses he would have incurred had his income been taxed. He made no deduction for taxes.
 
 
 33
 However, New York is not, in this respect, part of the real world. As properly decided by the majority, New York has opted for an unreal, tax free world in dealing with loss of income. In New York's world, taxes are not to be considered in determining future income loss. See Johnson v. Manhattan & Bronx Surface Transit Operating Auth., 71 N.Y.2d 198, 206, 524 N.Y.S.2d 415, 519 N.E.2d 326 (1988); Lanzano v. City of New York, 71 N.Y.2d 208, 210, 524 N.Y.S.2d 420, 519 N.E.2d 331 (1988); Coleman v. New York City Transit Auth., 37 N.Y.2d 137, 371 N.Y.S.2d 663, 332 N.E.2d 850 (1975); accord Woodling v. Garrett Corp., 813 F.2d 543, 557-58 (2d Cir.1987); Vasina v. Grumman Corp., 644 F.2d 112, 118 (2d Cir.1981). My limited concurrence stems from the fact that the majority would leave standing, and thus permit, calculations as performed by Dr. Martin, notwithstanding his deduction for living expenses on the basis of after tax income. That aspect of the opinion accepts a procedure which, in my view, is contrary to New York law. Indeed, Dr. Martin's analysis does exactly what those cases prohibit--it considers the impact of taxes.
 
 
 34
 Furthermore, Dr. Martin's approach results in an unfairness. By calculating the probable expenses from post-tax income, the resulting expense level is lower than would be the case if the expenses were derived from pre-tax income. Net income thus resulting from the deduction of lower, post-tax expenses is artificially high and is made more so since, as required by New York law, taxes are also not deducted. Consistency and fairness require that gross income be reduced by the level of expense one would be expected to incur out of income which is not reduced by taxes. In other words, the residual income of a decedent should be that income remaining after allowance is made for the expenditures he would have incurred had he no tax liability to be concerned with. With all due respect to the majority, if we are to treat these cases in the tax-free world as required by New York law, we must do so totally, not partially.
 
 
 35
 Accordingly, I do not concur in this aspect of the majority opinion. However, I concur in the result because of defendant's procedural failure to preserve this issue. Judge Goettel clearly saw the problem when he initiated the inquiry into the role of taxes in the substance of Dr. Martin's testimony. Defense counsel did not then move to preclude the testimony. In what was probably a tactical decision and wish to get the tax issue before the jury, the defense not only failed to move to preclude the evidence, but sought to exploit the "opened door." See Appendix at 180. Having chosen that posture, defendant should not now be heard to complain. See Fed.R.Civ.P. 51.
 
 
 36
 Thus, while I disagree with the substantive disposition of the one issue in the majority opinion, I concur in the result as I would not reach that issue because of defendant's procedural failure.
 
 
 37
 In all other respects, I concur in the opinion of the majority.