MORGAN GUARANTY TRUST COMPANY OF NEW YORK, as Executor Under the Will of Charles F. Fogarty, Deceased, Plaintiff,

v.

TEXASGULF AVIATION, INC., Defendant.

MORGAN GUARANTY TRUST COMPANY OF NEW YORK, as Executor Under the Will of Charles F. Fogarty, Deceased, Plaintiff,

v.

The GARRETT CORPORATION, Colt Electronics, Inc. and Phoenix Aerospace, Inc., Defendants.

No. 83 Civ. 3649 (GLG).

United States District Court, S.D. New York.

Sept. 14, 1987.

---

Kreindler & Kreindler, Milton G. Sinkoff, of counsel, New York, N.Y., for plaintiff.

Haight, Gardner, Poor & Havens, Randal R. Craft, Jr., of counsel, New York, N.Y., for defendant Texasgulf.

Perkins Coie, Richard C. Coyle, Sherilyn Peterson, Seattle, Wash., for defendants Garrett, Colt & Phoenix.

## MEMORANDUM DECISION

GOETTEL, District Judge.

The defendants move for judgment notwithstanding the verdict or a new trial on the issue of damages.[1]

This action arises out of the crash of a corporate jet at Westchester Airport on February 11, 1981, which killed all on board, including the top executives of the Texasgulf Company. These included Dr. Charles Fogarty, Chairman of the Board of the Company, whose estate is the plaintiff in this action.[2]

The jury in this case returned a verdict for the plaintiff in the total amount of $4,943,554, of which $866,000 was awarded for loss of parental care, guidance, training, and education. Although the more than four million dollars awarded for loss of support is extremely large, such a verdict can be justified depending upon the jury's resolution of certain disputed factual issues concerning how long and where Dr. Fogarty would have worked had he not met his untimely death. Consequently, the Court denied the defendants' motion addressed to that portion of the verdict. This opinion, therefore, is addressed only to the $866,000 awarded for the loss of parental services.

The challenge to this award takes two approaches. It is argued first that the judgment should be set aside in its entirety because of an improper summation by

1. The plaintiffs claim that as to three of the defendants the motion is untimely. However, at the conclusion of the trial, counsel for the defendant with the largest share of the verdict made such a motion and the other counsel implicitly joined in it. Moreover, in earlier proceedings the Court had agreed that it was not necessary for both attorneys to make the same objections or motions, and that they would be treated as having been made by both attorneys unless the non-speaking attorney indicated to the contrary. Consequently, we find the motion to be timely as to all defendants.

2. There have been two previous consolidated trials concerning this air crash, the first pertaining to affirmative defenses and the second pertaining to liability. Two different juries rendered verdicts in favor of the plaintiffs and against these remaining defendants. Separate damage trials have been held for the estates of each of the passengers.

plaintiff's counsel, Milton Sincoff. Alternatively, it is urged that the judgment was, in any event, excessive.

The portion of the summation to which the defendants object [3] suggested that the decedent's income might be used as a guideline to determine the pecuniary value of the loss of the father's parental care.[4] Defense counsel did not object to the foregoing portions of the summation when made, although the summation was interrupted for other objections. At the conclusion of the summation, however, the defendants objected to that and other portions of the summation. Defendants now argue that it was error for the Court not to immediately charge the jury about the guidelines suggestion. Counsel have apparently forgotten that the jury had already been excused for that day at that point. The Court offered to give an appropriate curative instruction if one were submitted when the jury was charged the following morning.

The defendants' requested instruction, submitted the following morning, read as follows: "In determining verdict No. 2, your verdict for the financial loss due to the children's loss of care, guidance, training, and education, you are not to use verdict No. 1, your verdict for the loss of financial support, as a guideline; there is no relationship between the two verdicts." The Court declined to give this charge for two reasons. In the first place, it was confusing. Moreover, it is not accurate to say that there is no relationship between Dr. Fogarty's earning power and the pecuniary value of his parental services. Because Dr. Fogarty was a rich and influential man, he had it within his power to do more for his children than someone of more humble status.[5]

■ The Court correctly charged the jury as to what elements should be considered with respect to the pecuniary damages with respect to the loss of parental guidance.[6] Consequently, we deny the de-

3. "So there are two parts to the case, the same two parts I told you about at the beginning of the case: the personal part of the case, his relationship with his children: and the money, the dollars, the support part of the case, from his earnings and support.

What is more important? There is no doubt about which is more important. It's not the financial part. It's the loss of the personal qualities and relationship with his children.

How does that translate into money, which is what you're here to do? The short answer is, I cannot tell you how it translates into money....

Now, I can give you some—I've agonized over whether to make a suggestion of a specific sum of money about this personal relationship between Chuck Fogarty and his children. And what I think is the appropriate thing for me to do is to give you some guidance. But I do not wish to infringe upon what your wisdom will be by making a suggestion, a dollar suggestion, of what I think is an important, dramatically important, thing for the children, who await your verdict.

Guidelines. I want you to look at the personal qualities that the past has demonstrated existed.

....

Seventeen years, I think, was the amount of time that the statistics tell you he would have lived. So each of those eight children had a loss over seventeen years. How does it translate into dollars? I cannot tell you. Is there a guideline? I don't know. I don't know how to help you. I don't wish to offend his memory and the relationship with his children by talking

about how much money he made. But is it a guideline? I think it might be. He made $880,-000. He made $800,000 the last year of his life. Does that have a relationship to his eight children? Mrs. Fogarty and the children are happy to let you do that.

If he was alive and the take-over occurred despite his resistance, you've heard the testimony from the witnesses,—you haven't heard it from the lawyers, but you heard it from the witnesses, including their own witnesses who I subpoenaed—they said he would have earned $2 million in a lump sum paid to him in 1981, as a result of the take-over, plus his salary, plus whatever else. Two and a half million dollars: is that a guideline? You tell us." Transcript at 98–101.

4. The defendants also object to the plaintiff's suggestion to the jury to "do what you would like another jury to do if you were the plaintiff." Although the suggestion was undoubtedly improper, we do not find that the passing reference was a material error.

5. For example, Dr. Fogarty had already helped several of his children with their career opportunities. Two of his children had been employed by Texasgulf, and he had helped another gain employment with Morgan Guaranty some years before his death.

6. New York's Pattern Jury Instruction 2:320 provides, *inter alia*, that:

Since the statute limits recovery to pecuniary injury, you may not consider or make any

fendants' motion to the extent that it seeks a new trial based upon the improper summation. We agree, however, that the size of the verdict for lost parental services may have been infected by plaintiff's counsel's excessive zeal.

■ We now turn to the defendants' argument that the verdict was, in any event, excessive. It would seem that in considering the pecuniary damages sustained by a decedent's children as a result of the loss of a parent's guidance, training and assistance, three elements will be involved:

1. the nature of the parent, including particularly, his ability to provide monetarily valuable parental services to his children;

2. the number of children in question;

3. the ages of the children.[7]

Under the circumstances of this case, the first two of these elements favor the plaintiff. Dr. Fogarty was, indeed, an extraordinary man, who earned a very large salary and was deeply concerned over his children's welfare. Moreover, he had eight children, a large number for modern times.

Counterbalancing these two elements is the fact that only one of Dr. Fogarty's children was still a minor at the time of the crash, and she was away at college. In addition, only one of his other adult children was still living at home. The remaining children had established to a substantial degree both their independence and their careers. Hence their father's impact upon their lives had already been well impressed and his future contributions would, of necessity, be limited.

We also note that no specific evidence was offered to indicate that any future opportunities were lost to the children as a result of their father's death. The Second Circuit requires such a specific showing when it is alleged that the lost guidance of a deceased parent had a pecuniary value to grown children. *First National Bank v. National Airlines, Inc.*, 288 F.2d 621, 624 (2d Cir.), *cert. denied*, 368 U.S. 859, 82 S.Ct. 102, 7 L.Ed.2d 57 (1961). Even as to minor children, some degree of proof is necessary with respect to the value of the loss of parental services. *Shu-Tao Lin v. McDonnell Douglas Corp.*, 742 F.2d 45, 52 (2d Cir.1984).

■ A review of cases decided both by New York State courts and by federal courts applying New York law indicates that the jury's verdict in this case was excessive. The highest awards ever sustained by the New York courts for loss of parental services against a charge of excessiveness appear to be $100,000, and those were to families with several minor children. *See, e.g., Juiditta v. Bethlehem Steel Corporation*, 75 A.D.2d 126, 428 N.Y.S.2d 535, (4th Dep't 1980). The Second Department of the Appellate Division of the Supreme Court of New York, which includes the location of this Court, has reduced several larger verdicts. In *Kenavan v. City of New York*, 120 A.D.2d 24, 507 N.Y.S.2d 193 (2d Dep't 1986), an award of $270,000 was found to be clearly excessive,

---

award for sorrow, mental anguish or injury to feeling or loss of companionship. You must appraise in an impartial manner to the best of your ability the pecuniary or money value of decedent to his widow and children on the day he died.

In fixing that value you should take into consideration decedent's character, habits and ability; the circumstances and condition of his wife and children; the services he would have performed for his wife and children; and the intellectual, moral and physical training, guidance and assistance he would have given the children had he lived....·

1 New York Pattern Jury Instructions PJI 2:320 (2d ed. 1974).

**7.** The importance of the age of the children in determining damages for loss of parental care and guidance has been noted by the New York courts. *See In re Cook's Estate*, 63 Misc.2d 537, 312 N.Y.S.2d 210 (1970). (Because jurisdiction in this case is based on diversity, state substantive law controls, and we have earlier determined that for choice of law purposes New York law should apply. *Gregory v. The Garrett Corporation*, 578 F.Supp. 871, 881 (S.D.N.Y. 1983), *reh. denied*, 625 F.Supp. 752 (S.D.N.Y. 1986); *see also Woodling v. The Garrett Corporation*, 813 F.2d 543, 551–52 (2d Cir.1987).) Therefore the total award for the loss of parental services cannot be characterized as approximately $100,000 per child, as the plaintiff suggests. Rather, the portion of the total award properly attributable to the loss of any individual child depends on, *inter alia*, his or her age.

and in *Richardson v. Lutheran Hospital of Brooklyn*, 70 A.D.2d 933, 417 N.Y.S.2d 526 (2d Dep't 1979), an award of $470,000 to three minor children was found excessive. In *Long v. City of New York*, 81 A.D.2d 880, 439 N.Y.S.2d 58 (2d Dep't 1981), an award of $150,000 to an infant plaintiff was reduced to $75,000.

Federal cases in this Circuit have followed the same approach and reduced similar excessive verdicts. In *O'Rourke v. Eastern Airlines, Inc.*, 730 F.2d 842 (2d Cir.1984), a $75,000 award to each child was deemed so excessive as to shock the court's conscience. *Id.* at 859. In *Red Star Towing & Transportation Co. v. Cargoship "Ming Giant"*, 552 F.Supp. 367, 377–78 (S.D.N.Y.1983), a jury award for loss of parental services to two young children in the amount of $550,000 was reduced to $150,000.

We conclude, therefore, that the award in this case was clearly excessive. Giving the plaintiff the benefit of every doubt,[8] this Court finds that the maximum award which can be justified in this case is $250,000. Unless the plaintiff is prepared to accept a remittitur to that amount, a new trial on damages will be ordered.

SO ORDERED.

---

8. The ages and occupations of the children at the time of their father's death are not in dispute.